IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                          CRIMINAL NO. 1:12CR100
                              (Judge Keeley)

**PATRICK FRANKLIN ANDREWS and
KEVIN M. BELLINGER,**

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING JOINT
MOTION TO BIFURCATE [DKT. NO. 139] AND
<u>GRANTING MOTIONS TO SEVER [DKT. NOS. 138, 146]</u>**

Pending before the Court is the joint motion of the defendants, Patrick Franklin Andrews ("Andrews") and Kevin Marquette Bellinger ("Bellinger") (sometimes "the defendants"), to bifurcate (dkt. no. 139) their cases, as well as Andrews' and Bellinger's separate motions to sever (dkt. nos. 138, 146).

### I. <u>BACKGROUND</u>

On October 2, 2012, the defendants were indicted and charged with one count of murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. § 1118 (Count One), and one count of second degree murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1111 (Count Two). Specifically, the indictment alleged that, while serving life sentences at the United States

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

Penitentiary at Hazelton, West Virginia, the defendants aided and abetted each other in killing a fellow inmate, Jesse Harris.

Because § 1118 provides for the death penalty, the defendants have had the benefit of appointed counsel to represent their interests since 2008 - four years before the indictment was returned. In 2010, the Department of Justice Committee for the Review of Capital Cases heard arguments from counsel regarding whether the death penalty was warranted. One year later, the Attorney General of the United States authorized the Department of Justice to pursue the death penalty against Andrews only. Soon after, the indictment was returned and the United States filed a notice of its intent to seek the death penalty against Andrews as to Count One. Upon Andrews' motion, the Court, on December 7, 2012, designated the case as complex (dkt. no. 68).

Since then, the defendants have filed numerous pre-trial motions, among which are Andrews' motion to bifurcate, joined by Bellinger, and Andrews' and Bellinger's separate motions to sever. After the motions were fully briefed, the Court heard oral argument

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

on November 8, 2013[1] and, for the reasons that follow, **DENIES** the joint motion to bifurcate and **GRANTS** the motions to sever.

## II. MOTION TO BIFURCATE

Title 18 U.S.C. § 1118(a), with which the defendants are charged, provides that "[a] person who, while confined in a Federal correctional institution under a sentence for a term of life imprisonment, commits the murder of another shall be punished by death or life imprisonment." Thus, the crime has three elements: (i) the defendant committed a murder, (ii) while confined in a Federal correctional institution, (iii) under a sentence for a term of life imprisonment.

In their joint motion to bifurcate, the defendants request that the first two elements be tried separately from the third. They argue that evidence of their underlying convictions "has the very real danger of resulting in the jury returning a verdict on the basis of the prior conviction rather than on the facts of the case." Defs.' Mot. to Bifurcate 2, Oct. 7, 2013, Dkt. No. 139. The government, on the other hand, argues that the law does not compel bifurcation, and that stipulating to the life sentence

---

[1] At the same hearing, the Court also heard argument on the joint motion to require election of counts (dkt. no. 128). However, the Court chooses to defer ruling on that motion until a later date.

element would allay the defendants' concern of jury prejudice. Gov't Reply Br. 4, Oct. 21, 2013, Dkt. No. 156.

The Federal Rules of Criminal Procedure do not provide a specific rule for bifurcation. However, Fed. R. Crim. P. 14(a) states:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Although Rule 14(a) typically governs motions to sever defendants, the Fourth Circuit has adopted its prejudice standard in the context of motions to bifurcate. See United States v. Cavillo-Rojas, 510 F. App'x 238, 246 (4th Cir. 2013). Under this standard, the moving party must demonstrate a "strong showing of prejudice." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984). Here, the defendants have not met their burden.

Under United States v. Foutz, 540 F.2d 733, 736 (4th Cir. 1976), prejudice comes in three forms: (1) jury confusion; (2) the mutual inclusivity of evidence for separate crimes; or (3) the jury's conclusion that the defendant is guilty of one crime and therefore guilty of the other because of his criminal disposition. Essentially, the defendants are concerned only with the latter form

of prejudice. They argue that prior knowledge of the convictions for which the defendants received life sentences will predispose the jury in favor of finding for the government as to the murder element.[2]

The law does not support the defendants' proposition that the presentation of evidence at trial as to a prior sentence or conviction, when the prior sentence or conviction is an element of the offense charged, will prejudice the jury as to another element of the same charge. This issue frequently arises in the context of felon-in-possession cases. For example, in United States v. Amante, 418 F.3d 220, 225 (2d Cir. 2005), the Second Circuit found that the district court had abused its discretion by bifurcating the element of "previous felony conviction" from the elements of "knowing possession of firearm" and "possession being in or affecting commerce." The court held that "where the prior conviction is essential to proving the crime, it is by definition not prejudicial." Id. at 224; see also United States v. Barker, 1

---

[2] The defendants also argue that bifurcation will promote judicial efficiency by eliminating additional voir dire, special interrogatories, and evidentiary objections. Notwithstanding that this argument in no way supports the Defendants' burden of demonstrating strong prejudice, these minor savings in judicial economy are outweighed by the inefficiency of delaying the government's presentation of evidence of the life sentence element until after the jury returns a verdict on the murder element.

5

F.3d 957, 959 (9th Cir. 1993); United States v. Birdsong, 982 F.2d 461, 482 (11th Cir. 1993), cert. denied, 508 U.S. 980 (1993); United States v. Collamore, 868 F.2d 24, 28 (1st Cir. 1989); United States v. Aleman, 609 F.2d 298, 310 (7th Cir. 1979), cert. denied, 445 U.S. 946 (1980); United States v. Brinklow, 560 F.2d 1003, 1006 (10th Cir. 1977), cert. denied 434 U.S. 1047 (1978).

Although the legal principle that evidence of one element of an offense cannot create prejudice as to another element of the same offense is contained within felon-in-possession cases, it is broadly applicable. If it were not, courts often would have to force a particular trial structure and order of presentation on prosecutors. This would contradict the Supreme Court's well-known holding that "the prosecution is entitled to prove its case by evidence of its own choice." Old Chief v. United States, 519 U.S. 172, 186 (1997). Therefore, for purposes of § 1118, the government's presentation of evidence as to the life sentence element will not instill prejudice in the jury to find for the government on the murder element.

Although bifurcation is not appropriate here, it is worth noting that the defendants have a cognizable means of excluding from the trial evidence of their prior convictions for which they received life sentences; if they stipulate to the life sentence

element prior to trial, the government will be precluded from presenting evidence of their underlying convictions. Indeed, the Fourth Circuit has expressly affirmed the proposition that "when a defendant offers to stipulate the fact of his prior felony conviction, evidence of the nature of the conviction is irrelevant and should be stricken." United States v. Rhodes, 32 F.3d 867, 870-71 (4th Cir. 1994) (citing United States v. Poore, 594 F.2d 39 (4th Cir. 1979)). As one court has noted, stipulations are not obligatory. United States v. Neal, No. 3:09CR17, 2009 WL 3112128, at *2 (W.D.N.C., Sept. 23, 2009). However, "failure to do so does not require bifurcation of the essential elements of the crime charged." Id.

Because the defendants have failed to demonstrate prejudice, and because stipulation provides a viable alternative to bifurcation, the Court denies the joint motion to bifurcate.

### III. **MOTIONS TO SEVER**[3]

Under the applicable Federal Rules of Criminal Procedure, an indictment may charge multiple defendants if they are alleged to have participated in the same act. See Fed. R. Crim. P. 8(b).

---

[3] Although each of the Defendants filed an individual motion to sever, the significant overlap of arguments makes a single discussion of both appropriate.

7

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

With regard to trial, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Joint trials promote efficiency and fairness to prosecutors, victims and witnesses. Richardson v. Marsh, 481 U.S. 200, 210 (1987). Nevertheless, Fed. R. Crim. P. 14(a) permits courts to grant severance if the joinder of defendants "appears to prejudice a defendant or the government." The Supreme Court has interpreted this standard to permit severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Finally, "[t]he grant or denial of a motion for severance under Rule 14 lies within the sound discretion of the trial court." United States v. Santoni, 585 F.2d 667, 674 (4th Cir. 1978).

The defendants argue that the special considerations in capital cases favor severance. "When a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 186 (1976). Typically, the "safeguards" protect against the potential prejudice of a death-qualified jury with respect to a non-capital co-defendant, Bruton/confrontation issues, and the spillover effect

8

of evidence admissible against one defendant but not the other. See United States v. Lujan, 529 F. Supp. 2d 1315, 1327 (D.N.M. 2007). In addition, mutually antagonistic defenses of co-defendants may justify severance. See United States v. Odom, 888 F.2d 1014, 1017 (4th Cir. 1989).

Here, Bellinger argues that certain evidence the government intends to introduce at trial against Andrews could violate Bellinger's Sixth Amendment confrontation rights. "In Bruton v. United States, 391 U.S. 123 (1968), [the Supreme Court] held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial." Richardson, 481 U.S. at 201. In Richardson, the Court set out Bruton compliance procedures, by which courts could avoid severance. Specifically, it held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211. But see Gray v. Maryland, 523 U.S. 185, 195 (1998) (holding that "redactions that replace a proper name with an obvious blank, the

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

word 'delete,' a symbol, or similarly notify the jury that a name has been deleted" do not comply with Bruton).

Bellinger's concern stems from an FBI 302 report (dkt. no. 146-1), in which Andrews' cell mate at USP Hazelton reported incriminating statements made by Andrews. The statements, however, include five equally inculpating references to Bellinger. Bellinger argues that, because Andrews' statements implicate him, he has a constitutional right to cross-examine Andrews. The problem occurs when Andrews invokes his Fifth Amendment right not to testify, in which case cross-examination would be impossible. Therefore, the issue here is whether the Bruton problem can be cured.

According to the FBI 302 report, Andrews made the following statements to his cell mate:

- "Andrews and Bellinger, aka 'KD,' made sure they left the yard prior to Harris so they could be waiting on Harris to ambushed [sic] him."

- "Andrews then told [his cell mate] how he had stabbed Harris in the head, the chest and the neck, and even acted the sequence out for [his cell mate]. . . . Andrews mentioned that Harris was bleeding badly. . . . At that point Andrews started to get up against the wall and move

USA V. ANDREWS AND BELLINGER                                  1:12CR100

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

> away from the fight. Bellinger was still fighting with Harris."

- "[Andrews' cell mate] knew from previous conversations that Andrews had known Bellinger for many years and had been incarcerated with him as a juvenile. Andrews had indicated to [his cell mate] that Bellinger would help Andrews with whatever he wanted him to help with."

- "[Andrews' cell mate] was in the unit when the fight between Andrews, Bellinger and Harris occurred . . . ."

In an effort to avoid the <u>Bruton</u> problem, the Court could instruct the jury to consider the statements only as they pertain to Andrews. However, <u>Bruton</u> explicitly held that "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." 391 U.S. at 137. Therefore, limiting instructions will not suffice.

In certain circumstances, redaction or replacement of a name can cure a <u>Bruton</u> problem. Even if such measures are taken in this case, however, the statements and the rest of the report clearly indicate that the Harris murder involved two attackers. Mere redaction would leave the jury free to draw the logical inference that Bellinger's name lay beneath the black markings. Moreover,

11

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

replacing the five references to "Bellinger" with a fictional name would cause jury confusion as to why Bellinger was being tried as Andrews' co-defendant rather than the named second attacker. In an effort to resolve their confusion, jurors might see through the artifice. Because the Bruton problem is incurable, Bellinger would necessarily suffer prejudice in a joint trial.

In addition to Bruton prejudice, the spillover effect of evidence will prejudice the defendants. As an element of § 1118, the government will have to prove that each of the defendants was serving a life sentence. In Zafiro, 506 U.S. at 539, the Supreme Court held that certain "risks" justify severance.

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.

Id. So it is here.

Life sentences are reserved for only the most heinous crimes. See State v. Lopez, 45 A.3d 1, 26 (R.I. 2012) (quoting State v. Mlyniec, 15 A.3d 983, 1003 (R.I. 2011)). Jurors understand this. They also understand that individuals associate with like individuals, which is why one's perception of an individual is often based on the individual's associates. Indeed, the

association between Andrews and Bellinger is undeniable, regardless of whether they are tried jointly or separately. However, by trying them jointly, the jury will become aware that each associated with another inmate serving a life sentence - knowledge that juries in separate trials would not have. To be sure, this prejudice is marginal, but it cannot be dismissed out of hand.

In addition to prejudice resulting from the Bruton problem and the spillover effect of evidence, the defendants will also be prejudiced by mutually antagonistic defenses. As the Supreme Court has explained, "'mutually antagonistic' or 'irreconcilable' defenses may be so prejudicial in some circumstances as to mandate severance." Zafiro, 506 U.S. at 538.

Here, in a joint trial, the defendants would be tried by a single jury for guilt or innocence. If Andrews is convicted, the same jury then would decide whether he should receive the death penalty. See 18 U.S.C. § 3593(b)(1). During the sentencing phase, Andrews' relative culpability will be squarely before the jury, given the mitigating factors it must consider. See 18 U.S.C. § 3592(a) (listing considerations such as "minor participation" and "equally culpable defendants"). This procedure creates an incentive for Andrews to shift culpability onto Bellinger during

the guilt phase in an effort to avoid the death penalty at the sentencing phase.

In Odom, the Fourth Circuit declined to find an abuse of discretion when the trial judge severed Odom from his co-defendant, Fincham. 888 F.2d at 1018. In that case, "it became obvious to the trial judge that throughout the trial he was going to be faced with a choice of either curtailing Odom's defense, which could prejudice Odom, or allowing Odom's attorney to continue his inflammatory attacks on Fincham, which would be prejudicial to Fincham." Id. Here, the Court faces precisely the "Morton's Fork" identified in Odom. In a joint trial, it would have to choose between restricting Andrews' defense or permitting Andrews' attacks on Bellinger; either option results in prejudice.

In his concurrence to Zafiro, 506 U.S. at 543-44, Justice Stevens observed:

> The burden of overcoming any individual defendant's presumption of innocence, by proving guilt beyond a reasonable doubt, rests solely on the shoulders of the prosecutor. Joinder is problematic in cases involving mutually antagonistic defenses because it may operate to reduce the burden on the prosecutor, in two general ways. First, joinder may introduce what is in effect a second prosecutor into a case, by turning each codefendant into the other's most forceful adversary. Second, joinder may invite a jury confronted with two defendants, at least one of whom is almost certainly guilty, to convict the defendant who appears the more guilty of the two regardless of whether the prosecutor has proven guilt

beyond a reasonable doubt as to that particular defendant.

Predictably, the mutually antagonistic defenses in this case will thrust defense counsel into the role of prosecutor, thereby reducing the government's burden. Moreover, "[t]he existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor." United States v. Tootick, 952 F.2d 1078, 1082 (9th Cir. 1991). For these reasons, the Court finds that mutually antagonistic defenses add to the prejudice resulting from joinder.

Finally, Bellinger argues that, as a non-capital co-defendant, he will be prejudiced by being tried before a death-qualified jury. The Supreme Court has rejected this argument, without more, as a basis for severance. Buchanan v. Kentucky, 483 U.S. 402, 415-20 (1987); see also United States v. Dinkins, 691 F.3d 358, 369 (4th Cir. 2012). Notwithstanding Buchanan, several district courts have found that the prejudice resulting from being tried before a death-qualified jury can add to the overall prejudice justifying severance of a non-capital co-defendant. See, e.g., Lujan, 529 F. Supp. 2d at 1327; United States v. Basciano, No. 05CR060, 2007 WL 3124622, at *8 (E.D.N.Y., Oct. 23, 2007); United States v. Rollack,

**MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION
TO BIFURCATE AND GRANTING MOTIONS TO SEVER**

64 F. Supp. 2d 255, 257 (S.D.N.Y. 1999). This Court agrees that any prejudice resulting from a death-qualified jury in this case, without more, cannot sustain severance; nonetheless, it adds to the aggregate prejudice resulting from joinder.

Beyond prejudice, Bellinger also argues that severance will promote judicial economy. See Bellinger's Mot. to Sever 8-11, Oct. 7, 2013, Dkt. No. 146.[4] Generally, efficiency and judicial economy provide the grounds for joinder rather than severance. See United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986). However, "[t]here are advantages and costs with respect to efficiency on both sides of the coin. Efficiency, thus, is a double edged sword. Capital trials involve procedures and considerations foreign to non-capital trials, inter alia, the additional peremptory challenges and voir dire questioning." United States v. Ayala Lopez, 319 F. Supp. 2d 236, 239 (D.P.R. 2004).

Although severance of the defendants in this case would burden judicial resources by necessitating an additional trial, that burden is outweighed by the increased simplicity of separate trials. Based on the Court's experience, a joint trial would educe

---

[4] The government concedes that, as to judicial economy, Bellinger "could be right." See Gov't Reply Br. 11, Oct. 21, 2013, Dkt. No. 157. However, it believes that the proposition is too speculative to sustain severance in this case. See id.

numerous jury selection, evidentiary, and other issues, many of which have been discussed above, that would otherwise be absent in separate trials. Other district courts have reached the same conclusion. See, e.g., United States v. McVeigh, 169 F.R.D. 362, 370 (D. Colo. 1996) ("Given these considerations," of less time for jury selection and fewer evidentiary issues, "it is far from certain that the time required for two separate trials would, in total, be substantially greater than the time required for a joint trial."); United States v. Kruckel, No. 92-611, 1993 WL 765648, at *8 (D.N.J., Aug. 13, 1993) ("[G]ranting separate trials will to a certain extent result in a more efficient trial for each defendant" because it will "obviate the need for the court to hold repeated and prolonged colloquies with counsel concerning whether or not to allow defendant Kruckel to introduce evidence which is prejudicial to defendant LiButti . . . .").

Severance of the defendants will result in increased judicial economy. Moreover, severance will eliminate the prejudice resulting from Bruton issues, the spillover effect of evidence, mutually antagonistic defenses, and a death-qualified jury. Therefore, for good cause shown, the Court grants the defendants' motions to sever.

### IV. CONCLUSION

For the reasons discussed, the Court **DENIES** the joint motion to bifurcate [dkt. no. 139] and **GRANTS** the defendants' motions to sever [dkt. nos. 138, 146].

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: November 26, 2013.

>                /s/ Irene M. Keeley
>                IRENE M. KEELEY
>                UNITED STATES DISTRICT JUDGE