FILED
JAN 1 5 2014
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

Plaintiff,

v.  Criminal Action No. 1:12-cr-100

PATRICK FRANKLIN ANDREWS (1),
and
KEVIN MARQUETTE BELLINGER (2),

Defendants.

## MEMORANDUM OPINION, REPORT AND RECOMMENDATION

### I. RELEVANT GENERAL PROCEDURAL HISTORY

Defendant Patrick Franklin Andrews ("Andrews") stands indicted for murder pursuant to 18 U.S.C. §§ 1111 & 1118. The Government filed and served a Notice of Intent to Seek the Death Penalty pursuant to 18 U.S.C. § 3593 (Docket No. 46).

Count One of the Indictment charges that "[o]n or about October 7, 2007, in Preston County, within the Northern District of West Virginia, PATRICK FRANKLIN ANDREWS and KEVIN MARQUETTE BELLINGER, the defendants herein, while confined in a Federal correctional institution, namely the United States Penitentiary at Hazelton, West Virginia, while each was under a sentence for a term of life imprisonment, aided and abetted by each other, did unlawfully kill Jesse Harris with malice aforethought, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in violation of Title 18, United States Code, Section 1118 and Section 2."

The grand jury returned "Notice of Special Findings" with respect to Count One. This notice mirrored the Government's Notice of Intent to Seek the Death Penalty as to Defendant Patrick Franklin Andrews ("Notice") (Docket No. 46). Of particular note are paragraphs (g), (h), and (i) of

the Notice within Count One of the Indictment.[1] The Government contends these convictions, if proved, are aggravating circumstances which justify imposition of the death penalty should Andrews be convicted of the substantive offense Charged in Count One. See 18 U.S.C. § 3592(c)(2)-(4).

Pursuant to the order of the District Judge, this case was designated as "complex." (Docket No. 68.) By Pretrial and Trial Scheduling Order, dated December 21, 2012, trial was scheduled to commence with jury selection on June 9, 2014. (Docket No. 71.)

On October 7, 2013, death-qualified counsel filed a Motion to Suppress Statements (Docket No. 140), a Motion to Suppress Seizure of Blood, Saliva, and Hair (Docket No. 141), a Motion to Compel Mandated Discovery and Brady Material (Docket No. 142), and a Motion to Suppress Search of Person (Docket No. 143.) The motions were referred to the undersigned by the District Judge by Orders dated October 8, 2013 (Docket No. 147) and November 1, 2013 (Docket No. 169).

On October 28, 2013, the Government filed its Response to Andrews' Motion to Suppress Seizure of Blood, Saliva, and Hair (Docket No. 164).

On November 8, 2013, came Andrews in person and by his counsel, Harry J. Trainor, Jr., and Stephen D. Herndon, and the United States by Assistant United States Attorney Brandon Flowers and Richard Burns for a hearing on the motions. At the hearing, the parties agreed that Andrews' Motion to Suppress Seizure of Blood, Saliva, and Hair presents a purely legal argument, and no

---

[1] These paragraphs state as follows: "(g) has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person (18 U.S.C. Section 3592(c)(2)); (h) has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. Section 3592(c)(3)); (i) has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person (18 U.S.C. Section 3592(c)(4))."

testimony or evidence regarding this motion was received.

## II. MOTION TO SUPPRESS SEIZURE OF BLOOD, SALIVA, AND HAIR [DE 141]

### A. Relevant Factual Background

On January 28, 2008, FBI Special Agent Gary Wheeler ("SA Wheeler") obtained a search warrant for the purpose of obtaining DNA evidence from Andrews. In support of his application for the search warrant, SA Wheeler included an affidavit in which he described his professional qualifications, the items to be seized, the nature of the investigation, and a factual description of the investigation. In particular, the tenth paragraph[2] of his affidavit stated:

> Your affiant believes Mr. Andrews and Mr. Bellinger assaulted Mr. Harris with fabricated weapons resulting in several stab wounds causing his death. Your affiant further believes that upon the person of Mr. Andrews there exists evidence of the offenses of Murder by a Federal Prisoner, in violation of United States Code, Section 1118, and Murder Within the Special Maritime Jurisdiction of the United States in violation of Title 18 of the United States Code, Section 1111(b), specifically his blood (two vials, EDTA tube) and saliva specimens (two swabs), as well as head hair (both pulled and clipped).

(Exhibit 1 at 4, Government's Response, Docket No. 164-1.) The undersigned issued the search warrant on January 28, 2008. On January 29, 2008, staff at USP Hazelton escorted Andrews to the medical office in the Special Housing Unit ("SHU"), where Health Systems Specialist Weaver drew blood, secured hair samples, and secured two bucal swabs of saliva. (Defendant's Motion at 7-8.)

### B. Contentions of the Parties

According to Andrews, the affidavit prepared by SA Wheeler "did not comply with the mandates of the Fourth Amendment to the United States Constitution." (Defendant's Mot. at 8,

---

[2] SA Wheeler's affidavit contains two paragraphs numbered "9." The first paragraph nine discusses the results of the autopsy conducted on Jesse Harris. The second paragraph number nine is the one quoted here.

3

Docket No. 141.) Specifically, Andrews argues that the affidavit "does not contain substantial information from which an independent judicial authority could make a reasoned, independent judgment that there was a nexus on January 28, 2009, or at any time, between the blood, hair, and saliva of . . . Andrews and the "Murder by a Federal Prisoner, in violation of Title 18 of the United States Code, Section 1111(b)" on October 7, 2007." (Id.)

The Government contends that SA Wheeler's affidavit contained the required substantial nexus. (Government's Response at 3, Docket No. 164.) Specifically, the Government argues that when the second paragraph nine is considered in context of the entire affidavit, the facts and circumstances of Harris' murder establish the nexus between the murder and the request to take Andrews' blood, hair, and saliva samples. (Id. at 4.)

Andrews' reply to the Government's response reiterates the arguments raised in his motion. Furthermore, he asserts that SA Wheeler's affidavit is "completely devoid of the necessary probable cause from which a neutral judicial officer could reasonably conclude that there was a nexus between the blood, saliva, or hairs of Mr. Andrews with the offense under investigation." (Defendant's Reply at 5, Docket. No. 181.)

**C.  Discussion**

"[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels–the 'seizure' of the 'person' necessary to bring him into contact with government agents and the subsequent search for and seizure of the evidence." United States v. Dionisio, 410 U.S. 1, 8 (1973) (internal citation omitted). The Supreme Court has recognized that "a physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." Skinner v. Ry. Labor Executives' Ass'n., 489 U.S. 602, 616

(1989). In Schmerber v. California, 384 U.S. 757, 767-68 (1966), the Court held that blood tests for evidentiary purposes are subject to the Fourth Amendment's warrant requirement or some recognized exception. In addition, several courts have held that the taking of saliva samples constitutes a search within the meaning of the Fourth Amendment.[3] See, e.g., In re Shabazz, 200 F. Supp. 2d 578, 583 (D.S.C. 2002); In re Grand Jury Proceedings Involving Vickers, 38 F. Supp. 2d 159, 165 (D.N.H. 1998); United States v. Nicolosi, 885 F. Supp. 50, 56 (E.D.N.Y. 1995); Henry v. Ryan, 775 F. Supp. 247, 253 (N.D. Ill. 1991).

To comply with the Fourth Amendment, the affidavit supporting the application for a search warrant "must provide the magistrate with a substantial basis for determining the existence of probable cause" based upon the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). "[T]o establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). To meet this standard, the affidavit supporting the application for a warrant must make clear to a reasonable person "that there is some nexus between the items to be seized and the criminal activity being investigated." Doe v. Broderick, 225 F.3d 440, 451 (4th Cir. 2000). The Fourth Circuit has noted that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one

---

[3] As the Fifth Circuit has noted, "[c]ourts are divided on the question of whether taking a hair sample rises to the level of a Fourth Amendment search and seizure." United States v. Bullock, 71 F.3d 171, 176 n.3 (5th Cir. 1995) (citing United States v. DeParias, 805 F.2d 1447, 1456-57 (11th Cir. 1986) and United States v. Anderson, 739 F.2d 1254, 1256-57 (7th Cir. 1984). Even if the taking of Andrews' hair constitutes a search and seizure, a warrant was issued. Accordingly, the undersigned need not decide whether taking hair samples constitutes a Fourth Amendment search and seizure.

would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). "Great deference" is given to the magistrate's probable cause decision, and review is limited to determining whether there was "a substantial basis for the [magistrate's] decision." United States v. Hurwitz, 459 F.3d 463, 473 (4th Cir. 2006) (internal quotation marks omitted).

In his affidavit, SA Wheeler stated:

5. On October 07, 2007 at approximately 6:28 p.m., a fight occurred at the United States Penitentiary, Hazelton, West Virginia resulting in the death of Mr. Harris. I have reviewed reports prepared by Corrections Officers C. Reshenberg and Charles Whipkey, who observed portions of the fight. Both Corrections Officers observed Mr. Harris and inmate Kevin Bellinger involved in a fight in the "Yellow Corridor" near the Y-3 Grill. As Corrections Officer Whipkey approached, he observed that Mr. Bellinger was stabbing Mr. Harris with an unknown weapon. As both Corrections Officers approached, Mr. Bellinger ran from them, ignoring several orders to stop. During the apprehension of Mr. Bellinger, he discarded his weapon among other inmates and the weapon could not be located by Corrections Officers. Mr. Bellinger was captured and detained by Corrections Officers Whipkey and other responding staff.

6. United States Penitentiary Special Investigative Agent Bryan Antonelli reported to your affiant, his review of video surveillance equipment in the institution revealed a second inmate had been involved in the fight, but had left the area unnoticed as Corrections Officers were chasing Mr. Bellinger. Utilizing recorded footage of the surveillance system, Corrections Officers followed the unknown inmate to his cell. Through a review cell assignments and inmate photographs, Corrections Officers identified the second inmate as Mr. Andrews.

7. Further review of the video surveillance system revealed as Mr. Andrews left the scene of the fight, he removed his shirt, gray in color, and placed it in a trashcan in the Yellow Corridor. Inspection of the trash discovered a gray shirt with a fabricated metal weapon wrapped in it. Both the shirt and the weapon appeared to have blood on them and both were recovered as evidence.

8. Analysis of the video surveillance system also revealed Mr. Andrews was wearing gray athletic shorts during the assault. Mr. Andrews was observed on the video recording to remove these shorts and discard them in the Yellow Corridor near the indoor recreation area door. Inspection of this area by Corrections Officers discovered the shorts in the same area. These shorts were also recovered as evidence and appeared to have blood on them.

> 9. United States Penitentiary Special Investigative Technician Robert Poissonnier witnessed the autopsy of Mr. Harris by the West Virginia State Medical Examiner's Officer and reported preliminary verbal results to your affiant. According to Mr. Poissonnier, Mr. Harris received numerous stab wounds with two different weapons causing his death.
>
> 9. Your affiant believes Mr. Andrews and Mr. Bellinger assaulted Mr. Harris with fabricated weapons resulting in several stab wounds causing his death. Your affiant further believes that upon the person of Mr. Andrews there exists evidence of the offenses of Murder by a Federal Prisoner, in violation of United States Code, Section 1118, and Murder Within the Special Maritime Jurisdiction of the United States in violation of Title 18 of the United States Code, Section 1111(b), specifically his blood (two vials, EDTA tube) and saliva specimens (two swabs), as well as head hair (both pulled and clipped).

(Exhibit 1 at 2-4, Government's Response, Docket No. 164-1.) Given this, the undersigned finds that SA Wheeler provided a detailed description of the alleged murder committed by Andrews and Bellinger and the items recovered that contained blood evidence.

After consideration of SA Wheeler's entire affidavit, the undersigned finds that it established a sufficient "nexus between the items to be seized and the criminal activity being investigated." Doe, 225 F.3d at 451. As noted above, review of video surveillance at Hazelton showed that Andrews participated in the assault on Harris, that he discarded clothing and a weapon following the attack, and that these items had blood on them. Video surveillance and the autopsy performed on Harris revealed that Harris died from multiple stab wounds. The detailed description contained in SA Wheeler's affidavit allowed a reasonable individual to infer that the Government wished to conduct testing on Andrews' DNA in order to exclude Andrews as a source of the blood located on the clothing and weapon discarded by him. Furthermore, the facts provided by SA Wheeler allowed a reasonable individual to infer a nexus between the items to be seized and the place to be searched, as an individual's blood, hair, and saliva are always stored upon his or her person. See Anderson,

851 F.2d at 729. Accordingly, the undersigned finds no reason why the blood, saliva, and hair samples taken from Andrews would be subject to suppression, as SA Wheeler's affidavit provided a "substantial basis" for the undersigned's decision to issue the search warrant. United States v. Hurwitz, 459 F.3d 463, 473 (4th Cir. 2006).

### III.  RECOMMENDED DECISION

For the foregoing reasons, the undersigned **RECOMMENDS** that the blood, saliva, and hair samples taken from Andrews on January 29, 2008, **NOT BE SUPPRESSED**. Accordingly, the undersigned **RECOMMENDS** that Andrews' **MOTION TO SUPPRESS SEIZURE OF BLOOD, SALIVA, AND HAIR** (Docket No. 141) **BE DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Memorandum Opinion, Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Memorandum Opinion, Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Memorandum Opinion, Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Memorandum Opinion, Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide electronic notification of this Memorandum

Opinion, Report and Recommendation to counsel of record.

DATED: January 15, 2014

/s/ John S. Kaull
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE