IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                   **CRIMINAL NO. 1:12CR100**
                                              **(Judge Keeley)**

**PATRICK FRANKLIN ANDREWS and**
**KEVIN M. BELLINGER,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING JOINT**
**MOTION TO REQUIRE ELECTION OF COUNTS [DKT. NO. 128]**

**I.**

Pending before the Court is the joint motion of the defendants, Patrick Franklin Andrews and Kevin Marquette Bellinger (collectively, the "defendants"), to require the election of counts. (Dkt. no. 128).

On October 2, 2012, a grand jury indicted the defendants on charges of murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. § 1118 (Count One), and second degree murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1111 (Count Two). Specifically, the indictment alleged that, on October 7, 2007, while serving life sentences at the United States Penitentiary at Hazelton, West Virginia, the defendants, aided and abetted by each other, killed Jesse Harris, a fellow inmate.

USA V. ANDREWS AND BELLINGER                              1:12CR100

## MEMORANDUM OPINION AND ORDER DENYING
## JOINT MOTION TO REQUIRE ELECTION OF COUNTS

Pursuant to 18 U.S.C. § 3005, the defendants have had the benefit of appointed counsel to represent their interests since 2008 - four years before the indictment was returned. In 2010, the Department of Justice Committee for the Review of Capital Cases heard arguments regarding whether pursuit of the death penalty was justified. A year later, Attorney General Eric Holder authorized the Department of Justice to pursue the death penalty only against Andrews. After the grand jury indicted both defendants, the United States noticed its intent to seek the death penalty against Andrews as to Count One. Upon Andrews' motion, the Court designated the case as complex on December 7, 2012 (dkt. no. 68).

Since then, the defendants have filed numerous pre-trial motions, among which is the pending motion to require election of counts. The Court heard oral argument on the motion on November 8, 2013, and, for the reasons that follow, **DENIES** the motion.

## II.

Section 1118(a) provides that "[a] person who, while confined in a Federal correctional institution under a sentence for a term of life imprisonment, commits the murder of another shall be punished by death or by life imprisonment." Section 1111(b) provides that "[w]ithin the special maritime and territorial

**MEMORANDUM OPINION AND ORDER DENYING**
**JOINT MOTION TO REQUIRE ELECTION OF COUNTS**

jurisdiction of the United States,[1] . . . [w]hoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."  Having been charged in the indictment with violating these two statutes, both of which arise from the same murder, the defendants urge the Court to require the government to elect which of the two counts it will pursue.  They argue that trying them on both counts violates the prohibition against double jeopardy, their due process rights, the Federal Rules of Criminal Procedure, and the common law.

**A.**

Turning first to the common law view of this argument, in the late nineteenth century, the Supreme Court of the United States undertook an examination of English and American common law to determine whether a trial court had correctly overruled a defendant's motion to require the government to elect one of two counts of murder on which to proceed. See Pointer v. United States, 151 U.S. 396, 401-03 (1894).  Pointer determined that the common

---

[1] The phrase "special maritime and territorial jurisdiction of the United States" is defined at 18 U.S.C. § 7, and includes "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

3

law consistently left the decision whether to require election of counts to the discretion of the trial court:

> The court is invested with such discretion as enables it to do justice between the government and the accused. If it be discovered at any time during a trial that the substantial rights of the accused may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, the court, according to the established principles of criminal law, can compel an election by the prosecutor. [This is] consistent with the settled rule that the court, in its discretion, may compel an election when it appears from the indictment, or from the evidence, that the prisoner may be embarrassed in his defense, if that course be not pursued.

Id. at 403.

Ultimately, the Supreme Court concluded that the trial court had not abused its discretion in denying the defendant's motion to require election. See id. ("In the present case we cannot say, from anything on the fact of the indictment, that the court erred or abused its discretion in overruling the defendant's . . . motions for an election by the government between the two charges of murder.").

A decade later, the Fourth Circuit confronted the same issue in McGregor v. United States, 134 F. 187 (4th Cir. 1904). The defendant in McGregor had been charged with counts of conspiracy to defraud the United States and receipt of money as a federal official for procuring a contract relating to the conspiracy. Id.

at 194.  The district court denied the defendant's motion to require election, and the Fourth Circuit affirmed, stating:

> The action of the court below in refusing to require the United States to elect under which counts of the indictment the trial should proceed was without error. The offenses charged were, as has been shown, directly connected together, and it was quite apparent to the trial judge that any evidence offered to sustain one count was also admissible and relevant to the other counts of the indictment.  Such motions are addressed to the discretion of the court, and are not reviewable on writ of error.

Id.  Thus, it is a well established legal principle that the common law commits the decision whether to require election of counts to the sound discretion of the trial court.

**B.**

The defendants next argue that prosecution on both counts would violate the Federal Rules of Criminal Procedure.  Under Rule 8, "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Here, the indictment properly charges the defendants with two counts arising from the same act or transaction, to wit, the same murder.  It follows, therefore, that

**MEMORANDUM OPINION AND ORDER DENYING**
**JOINT MOTION TO REQUIRE ELECTION OF COUNTS**

denying the motion to require election of counts would not violate any of the Federal Rules of Criminal Procedure.

**C.**

The defendants also argue that being tried on both counts violates the judicially created doctrine of multiplicity. Multiplicity occurs when a single offense is charged in several counts, 1A Charles A. Wright, Federal Practice and Procedure § 142 (4th ed. 2013), or when prosecutors charge "each act in a series of identical acts as though it were a separate crime." United States v. Allen, 13 F.3d 105, 107 (4th Cir. 1993). The doctrine, however, is merely a precursor to a violation of the Double Jeopardy Clause. In other words, "[t]he vice of multiplicity is that it may lead to multiple punishments for a single crime, an obvious double jeopardy violation." Wright, Fed. Practice § 142; see also United States v. Kennedy, 682 F.3d 244, 255 (3d Cir. 2012). Because any concern about multiplicity is encompassed within the issue of double jeopardy, the Court turns to that issue.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The defendants contend that being

6

tried on both counts would violate the constitutional prohibition against double jeopardy, and, consequently, their due process rights.

The seminal case analyzing the concept of double jeopardy is, of course, Blockburger v. United States, 284 U.S. 299 (1932). The defendant in Blockburger had been indicted and convicted on multiple drug charges, including the violation of Sections 1 and 2 of the Harrison Narcotic Act. See 284 U.S. at 300-01. Section 1 prohibited the selling of forbidden drugs except in or from the original stamped package, while Section 2 prohibited the selling of such drugs not in pursuance of a written order of the person to whom the drug is sold. See id. at 303-04.

Because the two violations resulted from a single sale, the question was whether the defendant had committed two offenses, or only one. See id. at 304. The Supreme Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. After applying the test, it concluded that "[e]ach of the offenses created requires proof of a different element," and, "although both

7

sections were violated by the one sale, two offenses were committed." Id.

Here, the parties concede that § 1118(a) requires proof of a pre-existing life sentence, which is not required by § 1111(b); they disagree, however, as to whether § 1111(b) requires proof of an additional element. The government asserts that "[t]o prove a § 1111 murder, [it] must prove, inter alia, that the murder occurred within the special maritime or territorial jurisdiction of the United States - an element that does not exist in § 1118." Gov't Resp. Br. 2, Dkt. No. 134.

The defendants counter that "§ 1118 requires that the defendant must be serving a life sentence in a federal penitentiary" and that "a federal penitentiary is a location that is within the special and territorial jurisdiction of the United States." Defs.' Mot. to Require Election 10, Dkt. No. 128. According to their reasoning, § 1111(b) does not require proof of an additional element. The relevant question thus is whether, by proving that the defendant committed the murder in a federal prison under § 1118(a), the government necessarily satisfies its burden as to the jurisdictional element of § 1111(b).

Several courts have examined whether jurisdictional elements of statutory crimes are considered for Blockburger purposes. Almost

thirty (30) years ago, in United States v. Gibson, 820 F.2d 692, 693-94 (5th Cir. 1987), a jury convicted Gibson of two counts of robbery of mail or property of the United States, in violation of § 2114, and two counts of robbery of government property from persons within the special territorial jurisdiction of the United States, in violation of § 2111.[2] On appeal, Gibson argued that she could not be convicted under both statutes without being subjected to double jeopardy. The Fifth Circuit agreed, holding:

> To convict under section 2111, the prosecutor must prove that the robbery occurred in a post office (or other place of special United States jurisdiction), while to convict under section 2114, he must prove that the robbery victim was a person having custody of United States mail or other United States property. We do not believe, however, that the differences here would satisfy the intended purpose of the Blockburger test.

Id. at 698.

Eight years later, in United States v. Hairston, 64 F.3d 491 (9th Cir. 1995), the Ninth Circuit criticized the holding in Gibson, and concluded that the "defendant's single act was not only a crime against government moneys, but also a crime committed on federal property." Id. at 496. In the Ninth Circuit's view, the jurisdictional element of § 2111 was more than purely incidental:

---

[2] The fifth count involved possession and receipt of stolen postal money orders, in violation of § 500, see Gibson, 820 F.2d at 694; but it is irrelevant here.

"Congress may have strong interests in treating crimes occurring within the jurisdiction of the United States differently from those occurring elsewhere"; thus, "the jurisdictional element of a statute like § 2111 must be given substantive weight in making the Blockburger analysis."  Id.

In 2006, a panel of the Fifth Circuit had an opportunity to revisit the holding in Gibson in the context of § 1111 and § 1118. In United States v. Agofsky, 458 F.3d 369, 372 (5th Cir. 2006), it reaffirmed that, in the Fifth Circuit, "Federal Murder, as charged in this indictment, is the same offense for double jeopardy purposes as Murder by a Federal Prisoner."  Nevertheless, the panel emphasized that its holding was based not on legal conviction but on binding precedent, stating it shared Hairston's "concern with the reasoning of Gibson."  Id.

Most recently, a district court in the Eastern District of California addressed the issue in United States v. Sablan, No. 1:08CR259, 2013 WL 5423621 (E.D. Cal., Sept. 26, 2013) (Philip M. Pro, J.).  As have Andrews and Bellinger, the defendant in Sablan had been indicted under both § 1111 and § 1118.  The district court held that, unlike the charge under § 1118, "Count One charging federal murder under § 1111 requires proof that the murder occurred within the special maritime and territorial jurisdiction of the

United States." Id. at *4. Therefore, it found that "§ 1111's jurisdictional element is a significant and separate fact for purposes of double jeopardy analysis under Blockburger." Id.

Although the Fourth Circuit has never addressed directly whether prosecution under both § 1111 and § 1118 violates a defendant's Fifth Amendment rights, it has concluded that jurisdictional elements are significant for Blockburger purposes. In United States v. Jones, 797 F.2d 184, 185 (4th Cir. 1986), defendants convicted of receiving stolen property within the territorial jurisdiction of the United States under § 662, and receiving stolen property after it had moved in interstate commerce under § 2315, argued on appeal that the jurisdictional element was the only distinction between the two crimes. Id. at 186. The Fourth Circuit determined that

> Count 1 requires proof that the acts were done within the special maritime and territorial jurisdiction of the United States. This is not a requirement under Count 2. However, Count 2 does require proof that the tickets were received after they moved in interstate commerce and that they were a part of interstate commerce when received. The proof of these additional facts satisfies the Blockburger test.

Id. at 186-87; see also United States v. Salad, 907 F. Supp. 2d 743, 749-50 (E.D. Va. 2012) (agreeing that "consideration of

11

jurisdictional elements is permissible," although not necessarily dispositive).

These cases establish that the modern trend favors the consideration of jurisdictional elements for Blockburger purposes. Despite this, the defendants argue that § 1111's jurisdictional element encompasses all murders in federal correctional facilities. They rely on Schoppel v. United States, 270 F.2d 413, 418 (4th Cir. 1959), where the defendant had been convicted under § 1111 for the murder of a guard inside a District of Columbia reformatory. See id. at 414. The statute in effect at the time contained the jurisdictional phrase "on land acquired for the use of the United States and within its concurrent jurisdiction." See id. at 418. Schoppel argued that the government had failed to meet its burden of proving beyond a reasonable doubt that the reformatory fell within the jurisdiction described in § 1111. See id.

The Fourth Circuit rejected that argument, finding that the government had presented sufficient evidence to establish the jurisdictional element. See id. ("[T]he United States is not called on to try title in a murder case."). In doing so, our circuit court implicitly rejected the suggestion offered by the defendants here that all federal correctional facilities are necessarily within the jurisdiction of the United States.

## MEMORANDUM OPINION AND ORDER DENYING
## JOINT MOTION TO REQUIRE ELECTION OF COUNTS

The ownership of USP Hazelton is undisputed. The central question is whether the jurisdictional language of § 1111 subsumes all federal prisons. The Second Circuit recently addressed this question in United States v. Davis, 726 F.3d 357, 365 (2d Cir. 2013), where it determined that "the mere fact that the assault took place in a federal prison on federal land . . . does not mean that the federal government had jurisdiction over the location of the assault."

The guidance provided by Schoppel and Davis convinces this Court that the government bears the burden of proving § 1111's jurisdictional element beyond a reasonable doubt, and that the statute's jurisdictional language does not ipso jure subsume USP Hazelton.

Nevertheless, the defendants contend that the same evidence test, when applied to this case, demonstrates that proceeding on both counts would violate the prohibition against double jeopardy. The same evidence test asks whether the same evidence will be presented to prosecute multiple crimes. In urging this argument, however, the defendants fail to recognize that, in applying the same evidence test, the Fourth Circuit has drawn a bright line between "single criminal trial[s]" and "successive prosecutions," and only applies the test to the latter. United States v. Ragins,

13

840 F.2d 1184, 1188 (4th Cir. 1988). Because the instant case involves a single criminal trial, rather than successive prosecutions, the same evidence test is not applicable.

**D.**

Finally, the defendants make a claim under the Due Process Clause that depends entirely on a violation of the prohibition against double jeopardy. Courts that have rejected the double jeopardy claim, however, also have rejected the accompanying due process claim. See Sattazahn v. Pennsylvania, 537 U.S. 101, 116 (rejecting petitioner's due process claim because it "is nothing more than his double-jeopardy claim in different clothing"); see also United States v. Hall, 551 F.3d 257, 273 (4th Cir. 2009) ("[T]here is no authority for the proposition that a bundling of constitutional guarantees [including double jeopardy] should be recognized as a basis for some due process right not otherwise available."). Therefore, based on its conclusion that prosecution of the defendants on both counts will not violate the Double Jeopardy Clause, the Court is satisfied that the defendants' due process rights are secure.

**III.**

USA V. ANDREWS AND BELLINGER                                    1:12CR100

**MEMORANDUM OPINION AND ORDER DENYING
JOINT MOTION TO REQUIRE ELECTION OF COUNTS**

For the reasons discussed, the Court concludes that allowing the government to prosecute the defendants on both counts of the indictment does not violate common law principles, the Federal Rules of Criminal Procedure, the Double Jeopardy Clause, or the defendants' due process rights. Therefore, it **DENIES** the defendants' motion to require election of counts.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: March 3, 2014.

>  /s/ Irene M. Keeley
>  IRENE M. KEELEY
>  UNITED STATES DISTRICT JUDGE