**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                                      **Criminal Action No. 1:12-cr-100**

**PATRICK FRANKLIN ANDREWS (1),
and
KEVIN MARQUETTE BELLINGER (2),**

**Defendants.**

## REPORT AND RECOMMENDATION/OPINION

### I.    Relevant General Procedural History

Defendants Patrick Franklin Andrews ("Andrews") and Kevin Marquette Bellinger ("Bellinger") stand indicted for murder pursuant to 18 U.S.C. §§ 1111 & 1118. The Government filed and served a Notice of Intent to Seek the Death Penalty, pursuant to 18 U.S.C. § 3593, as to Andrews. (Docket No. 46.)

Count One of the Indictment, filed on October 2, 2012, charges that "[o]n or about October 7, 2007, in Preston County, within the Northern District of West Virginia, PATRICK FRANKLIN ANDREWS and KEVIN MARQUETTE BELLINGER, the defendants herein, while confined in a Federal correctional institution, namely the United States Penitentiary at Hazelton, West Virginia, while each was under a sentence for a term of life imprisonment, aided and abetted by each other, did unlawfully kill Jesse Harris with malice aforethought, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in violation of Title 18, United States Code, Section 1118 and Section 2."

The Grand Jury returned a "Notice of Special Findings" with respect to Count One. This

notice mirrored the Government's Notice of Intent to Seek the Death Penalty ("Notice") as to Andrews. (Docket No. 46.) Of particular note are paragraphs (g), (h), and (i) of the Notice within Count One of the Indictment.[1] The Government contends these convictions, if proved, are aggravating circumstances which justify imposition of the death penalty should Andrews be convicted of the substantive offense charged in Count One. See 18 U.S.C. § 3592(c)(2)-(4).

Pursuant to the order of United States District Judge Irene M. Keeley, this case was designated as "complex." (Docket No. 68.) On November 26, 2013, District Judge Keeley granted the defendants' motions to sever. (Docket No. 192.) Pursuant to an Amended Pretrial and Trial Scheduling Order, trial for Bellinger is scheduled to commence with jury selection on June 9, 2014. (Docket No. 239.) Trial for Andrews is scheduled to commence with jury selection on May 4, 2015. (Docket Nos. 244, 254.)

On October 7, 2013, counsel for Bellinger filed a "Motion to Dismiss the Indictment Due to the Government's Extraordinary Pre-Indictment Delay." (Docket No. 145.) A day later, counsel for Andrews filed a motion to adopt Bellinger's motion. (Docket No. 148.) The Government filed a response on October 21, 2013. (Docket No. 153.) On November 4, 2013, District Judge Keeley granted Andrews' motion to adopt subject to the following conditions:

First, the arguments advanced by Andrews as to the motion to dismiss are

---

[1] These paragraphs state as follows: "(g) has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person (18 U.S.C. Section 3592(c)(2)); (h) has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. Section 3592(c)(3)); (i) has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person (18 U.S.C. Section 3592(c)(4))."

circumscribed by those raised by Bellinger in his motion. While this does not limit Andrews to the specific phrases or cases from Bellinger's motion, it does foreclose any arguments that were not advanced by Bellinger. Second, by adopting Bellinger's motion, Andrews defaults on any issues unique to him (e.g., standing, prejudice, etc.) that could arise during the Court's consideration of the motion to dismiss.

(Docket No. 173 at 2-3.) This matter was referred to the undersigned by District Judge Keeley on January 29, 2014. (Docket No. 253.)

On March 28, 2014, counsel for Andrews filed a "Notice of Withdrawal of Motion to Join and Adopt Co-Defendant's Motion to Dismiss Indictment Due to the Government's Extraordinary Pre-Indictment Delay." (Docket No. 316.) In this document, Andrews asserts that his motion to dismiss filed as Docket No. 202 "more accurately presents his position on the issues arising from pre-Indictment and pre-Death Notice delay, than does the Bellinger motion." (Id. at 2.) He noted that he was no longer seeking the relief granted by District Judge Keeley's November 4, 2013 Order "to the extent that it applies to [his] Motion to Join the Bellinger Motion to Dismiss." (Id.)

On March 31, 2014, came Andrews, by counsel Harry J. Trainor and Stephen Herndon, came Bellinger, by counsel L. Richard Walker and Christopher Davis, and came the United States by Brandon Flower, Assistant United States Attorney, and Richard E. Burns, for a hearing on, inter alia, the instant motion. The Court invited the parties to introduce such testimonial evidence as they deemed pertinent to the issues. None was offered by the Defendant or the United States. The Court admitted a March 28, 2014 memorandum from Russell Semplice, investigator for the Federal Public Defender's Office, to L. Richard Walker. (Docket No. 321-8.)

Andrews, through counsel, maintained his desire to withdraw from his previous joinder in the instant motion. Accordingly, the undersigned has considered the relief sought in the instant motion only as to Bellinger.

## II.   Contentions of the Parties

### A.   *Bellinger's Motion (Docket No. 145)*

According to Bellinger, "[t]he government forced [him] to suffer a delay between October 7, 2007, and October 2, 2012, which makes it impossible for him to receive a fair trial." (Docket No. 145 at 3.) He asserts that such delay prejudiced him and violated his rights under the Due Process Clause of the Fifth Amendment. (Id.) Specifically, he alleges that he "has been, for all practical purposes, unable to conduct a meaningful and complete investigation of his case" for the following reasons:

- Many staff members at USP Hazelton at the time of the incident have transferred to other locations;

- The FBI agent who handled the investigation in 2007 has transferred, and counsel is unaware of his whereabouts;

- Many inmates who were at USP Hazelton at the time of the incident have been transferred or released;

- One identified eyewitness, an inmate, "fails to recall the incident with clarity;"

- Another witness, an inmate who previously cooperated with defense counsel, has now stated that "he will refuse to discuss the case with the defense and that he will refuse to testify;"

- The Office of the Federal Public Defender "lacks the funds for attorneys and investigators to travel around the country to interview scores of potential witnesses;" and

- "[C]ritical exculpatory video evidence has been discarded and this is exclusively the fault of the government."

(Id. at 3-5.)

### B.   *Government's Response (Docket No. 153)*

In its response, the Government asserts that Bellinger's motion should be denied because he has failed to establish any actual prejudice to his defense. (Docket No. 153 at 1.) Specifically, the

Government alleges that Bellinger has failed to demonstrate why he is unable to interview witnesses because of the fact that they are no longer within the Northern District of West Virginia. (<u>Id.</u> at 4.) The Government also states that Bellinger's assertions regarding the inmates who can no longer remember the events of October 7, 2007 and who will no longer cooperate with the defense are speculative and conclusory. (<u>Id.</u> at 4-5.) According to the Government, Bellinger's assertion that a lack of funds has contributed to his inability to prepare is without merit, as neither the government shutdown nor the "sequester," both of which occurred in 2013, "could have had any impact on his attorneys' ability to prepare from the time of their appointment in August 2008." (<u>Id.</u> at 5.) The Government also states that Bellinger's complaint that a potentially exculpatory video was destroyed due to pre-indictment delay is speculative and conclusory. (<u>Id.</u>) Overall, the Government asserts that Bellinger cannot claim actual prejudice, as both he and Andrews "have had ample opportunity to review evidence and interview witnesses in the time between the murder and the indictment" because (1) they were both appointed counsel approximately ten (10) months after the murder and (2) were both provided substantial pre-indictment discovery. (<u>Id.</u> at 6.)

### III.  Analysis

It is well established that pre-indictment delay can potentially violate a criminal defendant's due process rights. <u>See</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 788-89 (1977); <u>United States v. Marion</u>, 404 U.S. 307, 324-25 (1971); <u>United States v. Daniels</u>, 698 F.2d 221, 223-24 (4th Cir. 1983). As the Fourth Circuit has noted, "'[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." <u>United States v. Shealey</u>, 641 F.3d 627, 633

(4th Cir. 2011) (alteration in original) (quoting Marion, 404 U.S. at 324).

The Fourth Circuit has created a two-pronged inquiry for evaluation of a claim that pre-indictment delay has violated a defendant's due process rights. First, a court must "ask whether the defendant has satisfied his burden of proving 'actual prejudice.'" United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009) (quoting United States v. Auto. Med. Labs, Inc., 770 F.2d 399, 403 (4th Cir. 1985)). The defendant's burden of demonstrating actual prejudice is heavy because "not only [must he] show actual prejudice, as opposed to mere speculative prejudice, but . . . he [must also] show that any actual prejudice was substantial–that he was meaningfully impaired in his ability to defend against the charges to such an extent that the disposition of the criminal proceedings was likely affected." Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996). If the defendant meets that threshold, the court must then "consider the government's reasons for the delay, 'balancing the prejudice to the defendant with the Government's justification for delay.'" Uribe-Rios, 558 F.3d at 358 (quoting Auto. Med. Labs, Inc., 770 F.2d at 404.) Accordingly, the "basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" Auto. Med. Labs, Inc., 770 F.2d at 404 (quoting Lovasco, 431 U.S. at 790).

The Fourth Circuit has also provided guidance on how to evaluate a defendant's claim that his due process rights have been violated by pre-indictment delay because the unavailability of witnesses has created prejudice. In this situation,

> courts have generally required that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witness's testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and, finally, show that the information the witness would have provided was not available from other sources. Jones, 94 F.3d at 908 (citations omitted).

"Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice" resulting from pre-indictment delay.  United States v. Jenkins, 701 F.2d 850, 855 (10th Cir. 1983); see also United States v. Galardi, 476 F.2d 1072, 1075 (9th Cir. 1973) ("The assertion that a missing witness might have been useful does not show the 'actual prejudice' required by Marion.").

At the motions hearing before the undersigned, counsel for Bellinger asserted that because of the Government's delay, they have not been able to identify, locate, and interview eyewitnesses to the murder of Jesse Harris.  The March 28, 2014 memorandum from Mr. Semplice to Mr. Walker indicates that defense counsel has identified nine (9) of the approximate 74 inmates who were located in the Yellow Corridor at the time of the incident.  (Docket No. 321-8 at 2.)  Five (5) of those inmates were interviewed by defense counsel prior to their transfer or release.  (Id.)  Counsel for Bellinger indicated that if the Government had sought an indictment in 2007 or 2008, and if those inmates who were eyewitnesses had remained at USP Hazelton, they would have been able to glean more information from those individuals.

The undersigned finds that Bellinger has failed to meet his heavy burden of demonstrating actual prejudice.  See Uribe-Rios, 558 F.3d at 358.  Bellinger essentially claims that the five-year passage of time between when the incident occurred and when the indictment was lodged prejudiced him because several potential eyewitnesses are now either unavailable or cannot be located.  At the motions hearing, Bellinger, through counsel, conceded that in the fall of 2008, the defense team received copies of the video that captured the incident.  However, he did not explain why he was unable to identify, locate, and interview potential witnesses in the approximate four years that passed from when the video was disclosed to defense counsel and when Bellinger and Andrews were

indicted. Despite his representations, the fact remains that he has failed to: (1) present the Court with the identities of potential witnesses; (2) demonstrate the "expected specificity" of their testimony; (3) establish that he made serious attempts to locate those witnesses; and (4) show that the information that these witnesses would have provided is unavailable from other sources. Jones, 94 F.3d at 907. Although Bellinger indicates that information gleaned from inmate eyewitnesses may have been useful to his defense, such an assertion is not sufficient to demonstrate actual prejudice. See Galardi, 476 F.2d at 1075.

In sum, the undersigned finds that Bellinger has failed to meet his heavy burden of proof of demonstrating that the passage of time between when the incident occurred and when the indictment was lodged caused actual prejudice to his defense. See Uribe-Rios, 558 F.3d at 358. Indeed, at the hearing, Bellinger, through counsel, asserted that he could not exactly tell the Court what the prejudice to his defense would be. This assertion amounts to "mere speculative prejudice," and Bellinger has not shown "that he was meaningfully impaired in his ability to defend against the charges to such an extent that the disposition of the criminal proceedings [would] likely [be] affected." Jones, 94 F.3d at 907 (alterations in original). Accordingly, because Bellinger has failed to meet his burden under the first prong of the Uribe-Rios analysis, the undersigned does not "consider the government's reasons for the delay, 'balancing the prejudice to the defendant with the Government's justification for delay.'" Id. (quoting Auto. Med. Labs, Inc., 770 F.2d at 404.)

## IV.    Recommendation

For the foregoing reasons, the undersigned United States Magistrate Judge recommends that Bellinger's "Motion to Dismiss Due to the Government's Extraordinary Pre-Indictment Delay" (Docket No. 145) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation/Opinion, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation/Opinion to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation/Opinion set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation/Opinion. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide electronic notification of this Report and Recommendation/Opinion to counsel of record.

DATED:  April 4, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE