IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                              Criminal Action No. 1:12-cr-100

**PATRICK FRANKLIN ANDREWS (1),**
and
**KEVIN MARQUETTE BELLINGER (2),**

    Defendants.

## MEMORANDUM OPINION AND ORDER

### I.    Relevant General Procedural History

Defendants Patrick Franklin Andrews ("Andrews") and Kevin Marquette Bellinger ("Bellinger") stand indicted for murder pursuant to 18 U.S.C. §§ 1111 & 1118. The Government filed and served a Notice of Intent to Seek the Death Penalty pursuant to 18 U.S.C. § 3593. (Docket No. 46.)

Count One of the Indictment charges that "[o]n or about October 7, 2007, in Preston County, within the Northern District of West Virginia, PATRICK FRANKLIN ANDREWS and KEVIN MARQUETTE BELLINGER, the defendants herein, while confined in a Federal correctional institution, namely the United States Penitentiary at Hazelton, West Virginia, while each was under a sentence for a term of life imprisonment, aided and abetted by each other, did unlawfully kill Jesse Harris with malice aforethought, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in violation of Title 18, United States Code, Section 1118 and Section 2."

The Grand Jury returned a "Notice of Special Findings" with respect to Count One. This notice mirrored the Government's Notice of Intent to Seek the Death Penalty ("Notice") as to

Andrews. (Docket No. 46.) Of particular note are paragraphs (g), (h), and (i) of the Notice within Count One of the Indictment.[1] The Government contends these convictions, if proved, are aggravating circumstances which justify imposition of the death penalty should Andrews be convicted of the substantive offense charged in Count One. See 18 U.S.C. § 3592(c)(2)-(4).

Pursuant to the order of United States District Judge Irene M. Keeley, this case was designated as "complex." (Docket No. 68.) On November 26, 2013, District Judge Keeley granted the defendants' motions to sever. (Docket No. 192.) Pursuant to an Amended Pretrial and Trial Scheduling Order, trial for Bellinger is scheduled to commence with jury selection on June 9, 2014. (Docket No. 239.) Trial for Andrews is scheduled to commence with jury selection on May 4, 2015. (Docket Nos. 244, 254.)

On December 16, 2013, death-qualified counsel for Andrews filed a Motion for Relief from Inhumane Conditions of Confinement. (Docket No. 213.) On January 6, 2014, counsel for Bellinger filed a Motion to Join Co-Defendant's Motion for Relief from Conditions of Confinement. (Docket No. 225.) On January 10, 2014, District Judge Keeley granted Bellinger's motion to join. (Docket No. 228.) The Government filed its response on February 12, 2014. (Docket No. 265.) Andrews filed a reply on March 7, 2014. (Docket No. 308.) This matter was referred to the undersigned by District Judge Keeley on January 29, 2014. (Docket No. 253.)

---

[1] These paragraphs state as follows: "(g) has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person (18 U.S.C. Section 3592(c)(2)); (h) has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. Section 3592(c)(3)); (i) has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person (18 U.S.C. Section 3592(c)(4))."

On March 31, 2014, came Andrews, in person and by counsel Harry J. Trainor and Stephen Herndon, came Bellinger, in person and by counsel L. Richard Walker and Christopher Davis, and came the United States by Brandon Flower, Assistant United States Attorney, and Richard E. Burns, for a hearing on, inter alia, the instant motion. The Court invited the parties to introduce such testimonial evidence as they deemed pertinent to the issues. None was offered by the defendants or the United States. Counsel for Bellinger offered, and the Court admitted, a memorandum summarizing letters from inmates at USP Hazelton regarding their conditions of confinement. (Docket No. 321-9.) The Government offered, and the Court admitted under seal, records of Bellinger's medical and psychological treatment while in the Special Housing Unit ("SHU"). (Docket Nos. 321-5 and 321-6.)

During the hearing, counsel for Andrews and the United States jointly requested that the Court continue the hearing on the instant motion as to Andrews. The parties have jointly requested that the Bureau of Prisons ("BOP") transfer Andrews to the Special Management Unit ("SMU") at USP Lewisburg in Lewisburg, Pennsylvania. If Andrews is transferred, the instant motion would be moot as to him. The undersigned granted the parties' request and continued the hearing on the instant motion as to Andrews. (Docket No. 322.) Accordingly, the undersigned only considers the relief sought in the instant motion as to Bellinger.

## II. Contentions of the Parties

### A. *Bellinger's Motion*

Bellinger alleges that he is being "held under cruel and inhumane conditions of confinement" that violate the Fifth and Eighth Amendments. (Docket No. 213 at 1.) He has been confined in the SHU at USP Hazelton since approximately October 7, 2007. (Docket No. 225 at 1.) Bellinger

3

asserts that "[t]his form of incarceration has placed a heavy burden" on him. (Id.) In his motion to join, Bellinger alleges the following substandard living conditions:

(a) He is not receiving adequate health care and "receives no treatment for migraine headaches, nausea, and problems sleeping";

(b) He is not receiving adequate dental care. The "toothpaste is substandard and there is no dental floss." Also, he "has seen a dentist only one time while in the SHU, since 2007";

(c) "There is inadequate psychological support for [him] and other inmates in the SHU, some of whom are seriously mentally ill and act out in the SHU." He has received no treatment for "depression and/or an anxiety disorder" and has "never received a comprehensive psychological evaluation by mental health staff from the BOP while in the SHU";

(d) He is not receiving appropriate hygiene products;

(e) The cells in the SHU are unsanitary, and they "are not cleaned well by staff and the inmates do not have the necessary cleaning products to improve the condition of the cells"; and

(f) He has been "subjected to threats and unprofessional conduct by correctional staff." Specifically, he "has been directly confronted by one staff member with a blatant, anti-black racial slur."

(Id. at 2-3.) His motion specifically states:

> It seems highly likely that some members of the correctional staff in the SHU are not following BOP procedures. This has caused Mr. Bellinger to become distressed, which is obvious to us during legal meetings and telephone conferences. Lately, we spend as much time talking to Mr. Bellinger about his intolerable conditions of confinement as we do about the trial scheduled for June 2014. There may reach a point where the harsh conditions of confinement interfere with our ability to community effectively with Mr. Bellinger and to prepare the defense appropriately.

(Id. at 3-4.) At the hearing, Bellinger, through counsel, indicated that he is seeking an order from the Court directing the BOP to follow Program Statement 5270.10 (Special Housing Units)[2], refrain

---

[2]The Court admitted a copy of this Program Statement relative to Andrews' "Motion to Dismiss–Administrative Segregation Constitutes Punishment Under the Unique Circumstances

4

rom harassing him with racial slurs, and refrain from unnecessarily injuring him throughout the course of his incarceration.

**B.  *Government's Response***

In response, the Government asserts that:

1. The court should deny the defendant's motion because the defendant does not raise a claim that is cognizable within a criminal case;

2. The court should deny the defendant's motion because his conditions of confinement claims should have been filed as a civil action following his exhaustion of administrative remedies; and

3. The court should deny the defendant's motion because he failed to allege facts that establish an Eighth Amendment violation.

(Docket No. 265 at 2-7.)

## III.    Analysis

Courts have consistently held that an incarcerated individual must bring challenges to his conditions of confinement through a civil action. Preiser v. Rodriguez, 411 U.S. 475, 499 (1973) (noting that an action under 42 U.S.C. § 1983 "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody"); see also Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]hen the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate."); Orellana v. Kyle, 65 F.3d 29, 31 (5th

---

of Instant Case" (Docket No. 196). The undersigned takes judicial notice of Program Statement 5270.10 as it applies to Bellinger's instant motion. See Antonelli v. Ralston, 609 F.2d 340, 341 n.1 (8th Cir. 1979) (taking judicial notice of a BOP Program Statement); see also In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn. 14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).

Cir. 1995) (per curiam) (noting that challenges to conditions of confinement should be brought in a civil rights action); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) ("A civil rights action, in contrast, is the proper method of challenging 'conditions of . . . confinement.'"). Indeed, several courts, including the Fourth Circuit in an unpublished opinion, have determined that a defendant cannot challenge his conditions of confinement through a motion filed in his criminal case. See, e.g., United States v. Carmichael; 343 F.3d 756, 760-61 (5th Cir. 2003); United States v. McConneyhead, 2 F. App'x 330, 331 (4th Cir. Jan. 24, 2001); United States v. Wade, No. 3:07-cr-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009); United States v. Henry, No. 06-33-01, 2008 WL 2795140, at *9-12 (E.D. Pa. July 17, 2008); United States v. Adams, Cr. Nos. S-02-0257 EJG, S-02-0560 EJG, 2007 WL 1545152, at *5 (E.D. Cal. May 29, 2007).

Some federal courts have entertained motions, filed in criminal cases, regarding conditions of confinement when those conditions have affected a defendant's Sixth Amendment right to counsel or right to access the courts. See, e.g., Wade, 2009 WL 3837151, at *1; United States v. Arnaout, No. 02 CR 892, 2002 WL 31744654, at *2 (N.D. Ill. Dec. 6, 2002). As noted above, counsel for Bellinger assert that "[t]here may reach a point where the harsh conditions of confinement interfere with our ability to communicate effectively with Mr. Bellinger and to prepare the defense accordingly." (Plaintiff's Brief at 4.) At the hearing, counsel represented that there have been at least two (2) or three (3) visits where they have only discussed Bellinger's alleged conditions of confinement rather than focusing on strategy for his upcoming trial. However, Bellinger has presented no evidence "to show that he is, in fact, unable to effectively assist counsel due to the conditions of his confinement." Wade, 2009 WL 3837151, at *1. To meet his burden, "[Bellinger] must do more than offer conclusory statements that the conditions of his confinement are affecting

his mental state and, therefore, his ability to assist counsel." Id. (alteration in original). "To merely state that [Bellinger] is suffering from his confinement is not sufficient to meet [his] burden of going forward." Id. As noted above, the undersigned invited counsel to present testimonial evidence, but counsel did not do so. Given the lack of evidence, the undersigned finds that, like the defendant in Wade, Bellinger has failed to meet his burden of proof of showing that his conditions of confinement are affecting his Sixth Amendment right to counsel. Accordingly, because his motion does not arise a valid Amendment claim, the motion is not cognizable in the pending criminal case. If Bellinger wishes to challenged his alleged conditions of confinement in the SHU at USP Hazelton, he must do so by filing a civil action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Under the Prison Litigation Reform Act ("PLRA"), a prisoner seeking to bring an action challenging his conditions of confinement under 42 U.S.C. § 1983, or any other federal law, must first exhaust all his available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion, as provided in § 1997e(a), is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under § 1983, is subject to the exhaustion of administrative remedies. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Id. It is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior* to filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, the Supreme Court has found that the PLRA's exhaustion requirement serves three

main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 548 U.S. 81, 93-94 (2006). Accordingly, this requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The BOP provides a four-step administrative grievance process that begins with attempted information resolution with prison staff (BP-8). See 28 C.F.R. § 542.13(a). If the prisoner's grievance is not informally satisfied, he must file a written complaint to the warden (BP-9) within twenty (20) calendar days of the date of the occurrence on which his complaint is based. Id. at § 542.14. If the inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within twenty (20) days of receiving a response from the warden. Id. at § 542.15. Finally, if the prisoner has received no satisfaction of his grievance, he may appeal to the Office of General Counsel (BP-11) within thirty (30) days of the date when the Regional Director signed a response. Id. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. §§ 541.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

At the hearing, counsel for the United States represented that Bellinger has not exhausted the four-step administrative remedy process set forth above. Indeed, counsel for Bellinger indicated their understanding that Bellinger is currently attempting to exhaust those remedies. Nevertheless, even if the undersigned were to construe Bellinger's instant motion as a Bivens action, the undersigned is compelled to find that he failed to exhaust all administrative remedies prior to filing

the motion.  See Porter, 534 U.S. at 524 (all administrative remedies must be exhausted prior to filing suit).  As such, Bellinger's instant motion is prematurely filed.

In sum, the undersigned finds that Bellinger has failed to state a claim that his Sixth Amendment right to counsel is impeded by his alleged conditions of confinement in the SHU at USP Hazelton.  Accordingly, his motion is not cognizable in his pending criminal case, see Wade, 2009 WL 3837151, at *1; Arnaout, 2002 WL 31744654, at *2.  The undersigned further notes that if any of the conditions or incidents alleged by Bellinger have actually occurred, this Memorandum Opinion and Order cannot and should not be construed as condoning those conditions or incidents.  Nevertheless, Bellinger must challenge those conditions and incidents by filing a civil action pursuant to Bivens.

### IV.  Conclusion

For the foregoing reasons, the "Motion for Relief from Inhumane Conditions of Confinement" (Docket No. 213) is **DENIED WITHOUT PREJUDICE** to Bellinger's right to file a civil action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion and Order to counsel of record.  The Clerk is also directed to terminate Docket No. 213 **as to Defendant Bellinger only**.

DATED: April 8, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE