IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                **CRIMINAL NO. 1:12CR100-1**
                                                **(Judge Keeley)**

**PATRICK FRANKLIN ANDREWS,**

    **Defendant.**

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 242],
OVERRULING OBJECTION [DKT. NO. 252],
AND DENYING MOTION TO SUPPRESS [DKT. NO. 141]**

On October 7, 2013, the defendant, Patrick Franklin Andrews ("Andrews"), filed a motion to suppress. (Dkt. No. 141). The Court referred the motion to the Honorable John S. Kaull, United States Magistrate Judge, on October 8, 2013. (Dkt. No. 147). After holding a hearing on the motion, Judge Kaull entered a memorandum opinion, report and recommendation ("R&R") on January 15, 2014, in which he recommended that the Court deny Andrews' suppression motion. (Dkt. No. 242). Andrews filed timely objections on January 27, 2014. (Dkt. No. 252). For the following reasons, the Court **ADOPTS** the R&R in its entirety, **OVERRULES** Andrews' objections, and **DENIES** Andrews' motion to suppress.

**I.**

On October 2, 2012, the Grand Jury indicted Andrews and his former co-defendant,[1] Kevin Marquette Bellinger ("Bellinger"), for

---

[1] By memorandum opinion and order dated November 26, 2013, the Court severed the two co-defendants. (Dkt. No. 192).

the murder of their fellow inmate Jesse Harris ("Harris"). The killing occurred on October 7, 2007 at the United States Penitentiary Hazelton, where each of the defendants was serving a life sentence. The indictment charged them with violations of 18 U.S.C. §§ 1111 and 1118.

On January 28, 2008, FBI Special Agent Gary Wheeler ("SA Wheeler") filed an application for a search warrant in the United States District Court for the Northern District of West Virginia, in which he sought Andrews' "DNA (deoxyribonucleic acid) evidence, i.e., blood, saliva, and hair." (Dkt. No. 164-1). In support of the warrant, SA Wheeler attached an affidavit containing the following relevant information:

> 5. On October 7, 2007 at approximately 6:28 p.m., a fight occurred at the United States Penitentiary, Hazelton, West Virginia resulting in the death of Mr. Harris. I have reviewed reports prepared by Corrections Officers C. Reshenberg and Charles Whipkey, who observed portions of the fight. Both Corrections Officers observed Mr. Harris and inmate Kevin Bellinger involved in a fight in the "Yellow Corridor" near the Y-3 Grill. As Corrections Officer Whipkey approached, he observed that Mr. Bellinger was stabbing Mr. Harris with an unknown weapon. As both Corrections Officers approached, Mr. Bellinger ran from them, ignoring several orders to stop. During the apprehension of Mr. Bellinger, he discarded his weapon among other inmates and the weapon could not be located by Corrections Officers. Mr. Bellinger was captured and detained by Corrections Officer Whipkey and other responding staff.
>
> 6. United States Penitentiary Special Investigative Agent Bryan Antonelli reported to your affiant, his review of video surveillance equipment in the institution revealed a second inmate had been involved in the fight, but had left the area unnoticed as Corrections Officers were chasing Mr. Bellinger. Utilizing recorded footage of the surveillance system, Corrections Officers followed the

2

unknown inmate to his cell. Through a review [of] cell assignments and inmate photographs, Corrections Officers identified the second inmate as Mr. Andrews.

7. Further review of the video surveillance system revealed as Mr. Andrews left the scene of the fight, he removed his shirt, gray in color, and placed it in a trashcan in the Yellow Corridor. Inspection of the trash discovered a gray shirt with a fabricated metal weapon wrapped in it. Both the shirt and the weapon appeared to have blood on them and both were recovered as evidence.

8. Analysis of the video surveillance system also revealed Mr. Andrews was wearing gray athletic shorts during the assault. Mr. Andrews was observed on the video recording to remove these shorts and discard them in the Yellow Corridor near the indoor recreation area door. Inspection of this area by Corrections Officers discovered the shorts in the same area. These shorts were also recovered as evidence and appeared to have blood on them.

9. United States Penitentiary Special Investigative Technician Robert Poissonier witnessed the autopsy of Mr. Harris by the West Virginia State Medical Examiner's Office and reported preliminary verbal results to your affiant. According to Mr. Poissonier, Mr. Harris received numerous stab wounds with two different weapons causing his death.

[10.] Your affiant believes Mr. Andrews and Mr. Bellinger assaulted Mr. Harris with fabricated weapons resulting in several stab wounds causing his death. Your affiant further believes that upon the person of Mr. Andrews there exists evidence of the offenses of Murder by a Federal Prisoner, in violation of United States Code, Section 1118, and Murder Within the Special Maritime Jurisdiction of the United States in violation of title 18 of the United States Code, Section 1111(b), specifically his blood (two vials, EDTA tube) and saliva specimens (two swabs), as well as head hair (both pulled and clipped).

Id. Satisfied that SA Wheeler's affidavit established probable cause, Judge Kaull issued the warrant on January 28, 2008. Id.

In his suppression motion, Andrews argued that SA Wheeler's affidavit did not establish a sufficient nexus between the items sought and the murder charges. (Dkt. No. 141 at 8). Contrary to that argument, Judge Kaull determined that SA Wheeler's affidavit "established a sufficient 'nexus between the items to be seized and the criminal activity being investigated.'" (Dkt. No. 242 at 7) (quoting Doe v. Broderick, 225 F.3d 440, 451 (4th Cir. 2000)). Andrews' pending objection reiterates his position that the "substantial information sufficient to establish probable cause to issue a search warrant does not exist in the Application and Affidavit For Search Warrant." Andrews also raises arguments for the first time based on the purported irrelevancy of, and distinction between, the items listed in the search warrant, as well as SA Wheeler's failure to account for Andrews' post-incident medical examination in his affidavit.[2]

## II.

The Fourth Amendment to the United States Constitution provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation." U.S. Const. amend. IV. The United States Supreme Court has determined that "probable cause" requires a magistrate judge to have a "substantial basis" for concluding that a search will uncover evidence of wrongdoing.

---

[2] Title 28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made."

Illinois v. Gates, 462 U.S. 213, 236 (1983); see also United States v. Chandia, 514 F.3d 365, 373-74 (4th Cir. 2008) ("Because we give 'great deference' to a magistrate's probable cause decision, our review is limited to determining whether there was 'a substantial basis for the [magistrate's] decision.'") (quoting United States v. Hurwitz, 459 F.3d 463, 473 (4th cir. 2006)). Moreover, Fourth Circuit precedent provides that "[t]he sufficiency of a search warrant and its supporting affidavit is reviewed de novo to determine whether a 'substantial basis' exists for the magistrate judge's decision." United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992). Finally, the affidavit "must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being investigated." Broderick, 225 F.3d at 451.

In his R&R, Judge Kaull determined that comparing Andrews' DNA to the blood found on the weapon and clothing he discarded would allow investigators to exclude Andrews as a source of that blood. On that basis, Judge Kaull found a nexus between the DNA samples and the Harris murder, and thus determined that SA Wheeler's affidavit provided a substantial basis for the warrant. Andrews, however, argues that excluding him as a source of the blood on the weapon and clothing did not advance the murder investigation, and therefore did not provide a sufficient nexus. He also argues that, in any event, he could not have been the source of the blood since he was medically examined following the killing and was found to

5

have no injuries - a fact that SA Wheeler omitted from the affidavit.

The Court is not persuaded by Andrews' arguments. The usefulness of linking a suspect to a murder weapon, as well as clothing soaked in the victim's blood, speaks for itself. In fact, DNA results did not establish that connection, although Andrews' fingerprint recovered on the weapon did link him to the items. Nevertheless, had the fingerprint not been discovered, investigators could have excluded Andrews as a potential possessor of the items based on the lack of DNA linkage, and turned their attention to other suspects. This exclusionary purpose also explains why Andrews' post-incident medical examination during which no injuries were found bears no relevance to the affidavit and was properly omitted.

Andrews further argues that the distinction between blood, saliva, and hair is legally significant, and that each of the three items must have an independent nexus to the crimes alleged. This argument lacks any basis in legal authority. It also fails to recognize that SA Wheeler was interested in the DNA rather than the vessel carrying it, and that the purpose of collecting DNA in multiple forms is to increase the quality and quantity of the DNA and to avoid subsequent collections due to inadequate samples.

This ties in to Andrews' final argument that the blood, saliva, and hair each must be independently "relevant" within the meaning of Fed. R. Evid. 401. Of course, all three items meet that

6

definition based on their common denominator, Andrews' DNA, which, as already noted, was relevant to whether Andrews was the source of the blood on the clothing and weapon and whether Andrews possessed those items.

### III.

For these reasons, the Court finds that SA Wheeler's affidavit provided a substantial basis for Judge Kaull's issuance of the search warrant, and that probable cause for the warrant existed. Therefore, the Court **ADOPTS** the R&R in its entirety, **OVERRULES** Andrews' objections, and **DENIES** Andrews' motion to suppress.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: April 17, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE