IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                           CRIMINAL NO. 1:12CR100-2
                                                                      (Judge Keeley)

**KEVIN MARQUETTE BELLINGER,**

    **Defendant.**

### ORDER OVERRULING OBJECTION [DKT. NO. 340], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 326], AND DENYING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 145]

Pending before the Court is the motion of the defendant, Kevin Marquette Bellinger ("Bellinger"), to dismiss the indictment due to the Government's pre-indictment delay. (Dkt. No. 145). The Court referred the motion to the Honorable John S. Kaull, United States Magistrate Judge, on January 29, 2014. (Dkt. No. 253). On April 4, 2014, Judge Kaull entered a report and recommendation ("R&R"), in which he recommended that the Court deny Bellinger's motion for failure to demonstrate actual prejudice. (Dkt. No. 326). On April 18, 2014, Bellinger objected to the R&R on the ground that Judge Kaull erred in concluding that Bellinger had not met his burden of demonstrating actual prejudice. (Dkt. No. 340). For the following reasons, the Court **OVERRULES** the objection, **ADOPTS** the R&R, and **DENIES** the motion to dismiss.

I.

The facts of this case are well documented in the record, and thus the Court summarizes them only briefly here. Bellinger is one

**ORDER OVERRULING OBJECTION, ADOPTING REPORT AND
RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO DISMISS**

of two defendants charged with the stabbing death of their fellow inmate, Jesse Harris.[1]  The killing occurred on October 7, 2007 at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia.  On August 20, 2008, the Court appointed learned counsel to represent Bellinger, who was facing potential death penalty prosecution.  On September 2, 2011, the United States Attorney General advised the Assistant United States Attorney not to seek the death penalty against Bellinger.  Bellinger was not indicted until October 2, 2012, when a federal grand jury charged him with violations of 18 U.S.C. §§ 1111 and 1118.

**II.**

The Court "shall make a de novo determination of <u>those portions</u> of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636 (emphasis added); <u>see also</u> <u>Farmer v. McBride</u>, 177 Fed. App'x 327, 330-31 (4th Cir. 2006) ("The district court is only required to review <u>de novo</u> those portions of the report to which specific objections have been made . . . .").  "As to those portions of a recommendation to which no objection is made, a magistrate judge's

---

[1] The other defendant, Patrick Franklin Andrews, was charged in the same indictment as Bellinger.  However, the Court severed the two defendants on November 26, 2013.  (Dkt. No. 192).

findings and recommendation will be upheld unless they are 'clearly erroneous.'" <u>Clark v. United States</u>, No. 5:05CV147, 2008 WL 2704514, *3 (N.D.W. Va., July 3, 2008).

### III.

The Fifth Amendment to the United States Constitution protects individuals against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend V. It is well established that "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." <u>United States v. Marion</u>, 404 U.S. 307, 324 (1971) (quoted by <u>United States v. Shealey</u>, 641 F.3d 627, 634 (4th Cir. 2011)).

In order to make this determination, the Fourth Circuit has crafted a two-pronged test: "First, we ask whether the defendant has satisfied his burden of proving 'actual prejudice.' Second, if that threshold requirement is met, we consider the government's reasons for the delay." <u>United States v. Uribe-Rios</u>, 558 F.3d 347, 358 (4th Cir. 2009) (internal citations omitted). As to the first prong,

> [t]his is a heavy burden because it requires not only
> that a defendant show actual prejudice, as opposed to
> mere speculative prejudice, but also that he show that
> any actual prejudice was <u>substantial</u> - that he was
> meaningfully impaired in his ability to defend against
> the state's charges to such an extent that the
> disposition of the criminal proceeding was likely
> affected.

<u>Jones v. Angelone</u>, 94 F.3d 900, 907 (4th Cir. 1996) (emphasis in original) (internal citations omitted).  Under this rubric, the Court considers Bellinger's proffer of prejudice allegedly suffered as a result of the five-year delay between Harris's killing and the return of the indictment.

Bellinger points to two examples of prejudice.  First, he argues that, during the delay, the Government discarded "critical exculpatory video evidence," which depicted him discussing his drug involvement with three other inmates.  According to an FBI report, on the day of the murder, Bellinger and his cohorts conversed about Harris's refusal to continue supplying drugs, and his interlocutors encouraged him to take care of the problem "just like it would be taken care of on the street."  Bellinger argues that the video might have shown that no such discussion ever occurred, thus undermining the Government's theory of motive.[2]  Highly speculative allegations of prejudice such as this are, of course, insufficient

---

[2] Notably, the surveillance video does not contain audio.

4

to warrant dismissal of the indictment. Moreover, even if Bellinger were correct as to what the video depicted, the Court cannot find that the disposition of his trial would likely be affected.

Bellinger's second argument focuses on his purported inability to "identify, locate, and interview many of the eyewitnesses due to the passage of time."

> When the claimed prejudice is the unavailability of witnesses, as here, courts have generally required that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witness' testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and, finally, show that the information the witness would have provided was not available from other sources.

Angelone, 94 F.3d at 908. On the other hand, "[v]ague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice stemming from preindictment delay." Id. at 909 (quoting United States v. Jenkins, 701 F.2d 850, 855 (10th Cir. 1983)). Here, Bellinger alleges his inability to interview seventy potential eyewitnesses; however, he does not name these witnesses, and concedes he has no knowledge of what their

USA V. KEVIN MARQUETTE BELLINGER                          1:12CR100-2

**ORDER OVERRULING OBJECTION, ADOPTING REPORT AND
RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO DISMISS**

testimony might be. <u>Angelone</u> clearly requires a level of specificity and concreteness that Bellinger has failed to satisfy.[3]

**IV.**

For the reasons discussed, the Court concludes that Bellinger has failed to demonstrate actual prejudice. Therefore, the Court **OVERRULES** Bellinger's objection, **ADOPTS** the R&R in its entirety, and **DENIES** Bellinger's motion to dismiss.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this order of referral to counsel of record.

DATED: April 23, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[3] Bellinger's failure to demonstrate actual prejudice makes a discussion of the Government's reasons for delay unnecessary.