IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

v.                                       Criminal Action No. 1:12-cr-100-1

**PATRICK FRANKLIN ANDREWS,**
    **Defendant.**

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendant Patrick Franklin Andrews' "Motion To Suppress Identification filed on December 18, 2013. (Docket No. 215.) The Government filed its response on January 13, 2014. (Docket No. 235.) This matter was referred to the undersigned by United States District Judge Irene M. Keeley on January 29, 2014. (Docket No. 253.) On September 15, 2014, came Andrews, by counsel Harry J. Trainor and Stephen Herndon, and came the United States by Andrew Cogar, Assistant United States Attorney, and Richard E. Burns, for a hearing on, inter alia, the instant motion. Prior to the hearing, the undersigned had granted Andrews' motion requesting his waiver of appearance at the motions hearing. (Docket Nos. 514, 516.)

### I.   Relevant General Procedural History

Defendants Andrews stands indicted for murder pursuant to 18 U.S.C. §§ 1111 & 1118. The Government filed and served a Notice of Intent to Seek the Death Penalty, pursuant to 18 U.S.C. § 3593, as to Andrews. (Docket No. 46.)

Count One of the Indictment, filed on October 2, 2012, charges that "[o]n or about October 7, 2007, in Preston County, within the Northern District of West Virginia, PATRICK FRANKLIN ANDREWS and KEVIN MARQUETTE BELLINGER, the defendants herein, while confined in a Federal correctional institution, namely the United States Penitentiary at Hazelton, West Virginia,

while each was under a sentence for a term of life imprisonment, aided and abetted by each other, did unlawfully kill Jesse Harris with malice aforethought, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in violation of Title 18, United States Code, Section 1118 and Section 2."

The Grand Jury returned a "Notice of Special Findings" with respect to Count One. This notice mirrored the Government's Notice of Intent to Seek the Death Penalty ("Notice") as to Andrews. (Docket No. 46.) Of particular note are paragraphs (g), (h), and (i) of the Notice within Count One of the Indictment.[1] The Government contends these convictions, if proved, are aggravating circumstances which justify imposition of the death penalty should Andrews be convicted of the substantive offense charged in Count One. See 18 U.S.C. § 3592(c)(2)-(4).

Pursuant to the order of United States District Judge Irene M. Keeley, this case was designated as "complex." (Docket No. 68.) On November 26, 2013, District Judge Keeley granted the defendants' motions to sever. (Docket No. 192.) On June 16, 2014, following a week-long jury trial, co-defendant Bellinger was found guilty of Counts One and Two. (Docket No. 486.) Trial for Andrews is scheduled to commence with jury selection on May 4, 2015. (Docket Nos. 244, 254.)

## II. Contentions of the Parties

### A. Andrews' Motion (Docket No. 215)

---

[1] These paragraphs state as follows: "(g) has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person (18 U.S.C. Section 3592(c)(2)); (h) has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. Section 3592(c)(3)); (i) has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person (18 U.S.C. Section 3592(c)(4))."

In his motion, Andrews seeks court prohibition of the state's witnesses (law enforcement officers) who made an out of court identification of Andrews after being shown a single photograph from making an in court identification of Andrews. Andrews contends the out of court identification was the result of an overly suggestive procedure which taints any in court identification by the same people.

**B.      Government's Response (Docket No. 235)**

In its response, the Government objects to Andrews' motion for the following reasons:

1. Andrews' motion is premised on faulty perception of facts.
2. SIS did not rely on a single photograph in identifying Andrews as one of Harris' assailants.
3. SIS did not rely on a witness identifications of Andrews to determine the second assailant's identity.
4. The process used to determine Andrews as the second assailant was not overly suggestive.

### III.    Facts

The undersigned finds the following facts to be undisputable based on the testimony of Officer Poissionner:

1. Jessie Harris was stabbed at approximately 6:30 p.m. on October 7, 2007 in the yellow corridor leading from the recreation yard at Hazleton prison.
2. Three people including Harris were involved in the Harris stabbing.
3. BOP personnel responded to the location of the Harris stabbing.
4. Before BOP personnel arrived at the scene of the stabbing "one of the (three) participants left and walked from the intersection of the yellow and blue corridors in the direction of the red

3

corridor." (Docket No. 215, p. 2.)

5. On arrival at the scene of the stabbing, BOP staff found the injured Harris and detained inmate Kevin Bellinger.

6. Harris was removed from the scene of the stabbing to the prison infirmary.

7. USP Hazleton has a large number of motion activated video cameras located throughout the prison.

8. Following the stabbing, SIS (special investigative services) officers reviewed surveillance video from the motion activated video cameras located in the area of the stabbing, the red corridor leading to a housing unit, and the housing unit located off of the red corridor.

9. SIS officers, using the video from the surveillance cameras located in the yellow and red corridors and the housing unit off the red corridor and by pausing and printing still shots from the same, were able to follow the second assailant from the scene of the stabbing to a cell located in the housing unit off the red corridor.

10. SIS, having the printed still shots of the second assailant; knowing the names of the inmates assigned to the cell in question from prison records; and, having the inmate profile pictures for those inmates assigned to the cell, were able to compare the video still shots with the inmate profile pictures and reach a conclusion that the second assailant was Andrews. This was completed by 11:00 p.m. on October 7, 2007.

11. Prison staff went to Andrews' assigned cell and took control of Andrews after comparing the video still shot and the inmate profile pictures with Andrews as he appeared before them.

12. Harris was transported to a local hospital from the prison infirmary.

13. Harris died at the local hospital on October 8, 2007.

**IV. Analysis**

The burden of proof is on the defendant Andrews in his challenge of the admissibility of identification testimony. United States v. Wade, 338 U.S. 218 (1967).

The Fourth Circuit instructs that a two step process is required in making a determination of whether identification testimony is admissible. U.S. v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997). The Court must first determine whether the initial identification was impermissibly suggestive. United States v. Wilkerson, 84 F.3d. 692, 695 (4th Cirl 1996). Even if the photographic identification is overly suggestive, the second step is to determine the reliability of the identification from a totality of the circumstances. Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir. 1994), *cert denied*, 513 U.S. 831 (1994).

"[Reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stoval confrontations. The factors to be considered are set out in Biggers, 409 U.S., at 199-200, 93 S.Ct., at 382. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977).

The undersigned agrees with the government that Defendant's argument is premised on faulty perception of the facts.

As noted in the findings of fact, the SIS agents viewed the video footage from the video surveillance cameras from the point of the attack in the yellow corridor through the red corridor to a specific cell in the cell block (housing unit) off of the red corridor. Since all inmates were locked (locked down) in their cells following the attack on Harris, once inside the cell, the inmates could not leave or change from one cell to another. Once the SIS agents followed the inmate from the point of the attack on Harris in the yellow corridor through the red corridor to a specific cell, it was a simple matter for the agents to pull the prison records showing the inmates assigned to that cell. They then

5

pulled the inmate profile photographs for the inmates assigned to the identified cell and compared those photographs to the still shots of the second assailant they had taken from the video surveillance cameras. This led them to the conclusion that the second assailant was Andrews. Prison staff then went to the cell in question and removed Andrews from the cell.

There was no eyewitness identification in the sense of <u>Biggers</u> or <u>Manson</u>, *Id.* Accordingly, there is no question concerning degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

Even if the <u>Biggers</u>' factors are to be considered, the undersigned concludes that, since the inmates were locked down in their cells following the attack on Harris, the SIS agents using the video surveillance cameras could take their time and meticulously trace the second assailant from the point of attack through the red corridor to the cell in the housing unit off the red corridor where he and his cellmate were then locked down. Their attention was focused on following the second assailant as he passed from one video surveillance camera to the next. By comparing the surveillance video still shots and particularly the still shot of the second assailant as he looked up at a video surveillance camera with the inmate profile pictures for the two inmates assigned and locked down in the identified cell in the housing unit off of the red corridor, there was no question of the accuracy of the identification. That accuracy was perpetuated when the prison staff went to the housing unit where the identified cell was located and compared the prisoner in the cell with the photos of Andrews which resulted in the immediate seizure of Andrews. There was no delay in confrontation. As soon as the video tracking and the photo comparisons were completed by the SIS, staff was provided with the photos and sent to the housing unit to identify and seize the second assailant - Andrews.

Moreover, the identification of Andrews as the second assailant passes the tests outlined by the

Fourth Circuit in Johnson, *supra*. First, the undersigned concludes that the deliberative process used in identifying Andrews as the second assailant was not overly suggestive. Even if it was, the totality of the circumstances leads the undersigned to the inescapable conclusion that the identification of Andrews as the second assailant was reliable.

### V. Recommendation

For the reasons stated herein, the undersigned **RECOMMENDS** that Defendant Patrick Franklin Andrews' Motion To Suppress Identification filed on December 18, 2013. (Docket No. 215) be **DENIED.**

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record.

DATED: November 6, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE