IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.	CRIMINAL NO. 1:12CR100-1
    (Judge Keeley)

**PATRICK FRANKLIN ANDREWS,**

    **Defendant.**

**ORDER OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 490],
ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 475],
DENYING MOTION TO DISMISS INDICTMENT [DKT. NO. 200], AND
DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT [DKT. NO. 291]**

Pending before the Court are motions to dismiss the indictment (dkt. no. 475) and for permission to employ an expert (dkt. no. 291) filed by the defendant, Patrick Franklin Andrews ("Andrews"). Also pending is the report and recommendation ("R&R") of the Honorable John S. Kaull, United States Magistrate Judge, recommending that the Court deny both motions, to which Andrews has objected. For the reasons that follow, the Court **OVERRULES** Andrews's objections, **ADOPTS** the R&R, **DENIES** Andrews's motion to dismiss, and **DENIES** Andrews's motion for permission to employ an expert.

**I.**

On October 2, 2012, a grand jury sitting at the Wheeling point of holding court in the Northern District of West Virginia returned

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

an indictment that charged Andrews, an African-American, with two counts of murder. Allegedly, on October 7, 2007, while serving a life sentence at the United States Penitentiary Hazelton in Preston County, West Virginia, Andrews unlawfully killed another inmate. On October 23, 2012, the government noticed its intent to seek the death penalty against Andrews. Because the incident occurred in Preston County, the case was assigned for trial at the Clarksburg point of holding court.

In December 2013, Andrews filed a motion to dismiss the indictment, arguing that this district's jury selection process does not fairly represent African-Americans in the venire from which grand and petit jurors are chosen. Based on data he compiled from the most recent census and "Suburban Statistics," Andrews claims that 3.02% of West Virginia's jury-eligible population is African-American. According to Andrews, during the time period when he was indicted, the venire from which grand jurors were chosen for the Wheeling point of holding court included thirty African-Americans, representing 0.69% of the total venire. Also according to Andrews, the venire from which petit jurors were chosen for the Clarksburg point of holding court between 2009 and 2013 included thirty-two African-Americans, representing 0.73% of the total venire. From these numbers, Andrews concludes that this

**USA v. ANDREWS**                                                    1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

district's jury selection process is inherently unconstitutional. Andrews also requests funding for a statistician to perform further analysis regarding this issue.

## II.

On May 5, 2014, Judge Kaull ordered counsel for Andrews to appear for an ex parte hearing on May 12, 2014 regarding the motion for permission to employ a statistician. At the hearing, counsel for Andrews advised that his client had waived his appearance. During the hearing, Judge Kaull asked several questions about Andrews's motion to dismiss in an effort to determine how, if at all, the statistician's analysis would support it.

In his R&R, Judge Kaull thoroughly reviewed the jury selection procedures in this district, explaining as follows:

1. Each of the thirty-two counties comprising the district is assigned to one of four points of holding court;

2. The Clerk maintains a master list of potential grand and petit jurors for each point of holding court;

3. The names on each of the four lists are aggregated from the list of registered voters and the list of licensed drivers in each of the assigned counties;

4. A local college then randomly selects a number on the list, which corresponds to the first name to be selected;

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

5. To determine the subsequent selectees, the Clerk divides the total names on the list by the minimum number of jurors needed for a given time period;

6. That quotient is added to the randomized number to determine the second name selected;

7. The quotient is multiplied by two and added to the randomized number to select the third name, and it is multiplied by three and added to the randomized number to select the fourth name, and so on; and, finally,

8. From this master list, the names of a specified number of grand or petit jurors are randomly selected for a given proceeding.

After reviewing this process, Judge Kaull observed that Andrews had failed to provide data as to the jury-eligible African-American population in the six counties comprising the Wheeling point of holding court[1] and the eleven counties comprising the Clarksburg point of holding court.  Thus, neither Judge Kaull nor Andrews was able to calculate any disparity.  Moreover, Judge Kaull concluded that the Clarksburg data "are not relevant to the issue

---

[1] In fact, Andrews failed to provide data as to the African-American population as a whole at the Wheeling point of holding court.

**USA v. ANDREWS** 1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

posed with respect to the grand jury that indicted Andrews." (Dkt. No. 475 at 13).

In addition, Judge Kaull explained that, "[a]t best, Andrews' assumptions support claim [sic] of passive exclusion, not systematic exclusion or active discrimination," as is required by law. (Dkt. No. 475 at 20). Accordingly, he concluded that Andrews's motion to dismiss stood "no chance of being granted," and therefore recommended that the Court deny both the motion to dismiss and the motion for permission to employ a statistician.

Andrews objects to the R&R on several grounds. First, he contends that Judge Kaull erred by requiring evidence of discriminatory or exclusionary practices or active discrimination. Second, he argues that, even if such evidence were required, he was precluded from obtaining it based on Judge Kaull's refusal to authorize funds for an expert statistician. Finally, Andrews urges that Judge Kaull violated his due process rights by failing to notify him that the May 12, 2014 hearing would involve questions regarding his motion to dismiss.

### III.

The Court "shall make a de novo determination of <u>those portions</u> of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636

**USA v. ANDREWS**                                                    1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

(emphasis added); see also Farmer v. McBride, 177 Fed. App'x 327, 330-31 (4th Cir. 2006) ("The district court is only required to review de novo those portions of the report to which specific objections have been made . . . ."). "As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are 'clearly erroneous.'" Clark v. United States, No. 5:05CV147, 2008 WL 2704514, at *3 (N.D.W. Va. July 3, 2008); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

**IV.**

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." Berghuis v. Smith, 559 U.S. 314, 319 (2010) (citing Taylor v. Louisiana, 419 U.S. 522 (1975)). That same right also extends to grand jury proceedings. See Castaneda v. Partida, 430 U.S. 482, 492 (1977). In order to establish a prima facie violation of the Sixth Amendment's fair cross section guarantee, a defendant must demonstrate three things:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that

**USA v. ANDREWS** 1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

> this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979), aff'd by Berghuis, 559 U.S. at 327. It goes without saying that African-Americans represent a distinctive group. Thus, the focus here is on whether African-Americans are underrepresented in this district's jury venires, and, if so, whether such underrepresentation is the result of systematic exclusion.

**A.**

Andrews has failed to demonstrate underrepresentation as required by Duren's second prong. As to the Wheeling grand jury that indicted him, Andrews argues that, because only 0.69% of the venire was African-American, and because 3.02% of the state's jury-eligible population is African-American, underrepresentation necessarily existed. This argument fails, however, because Andrews has compared the percentage of African-Americans in the Wheeling venire to the percentage of jury-eligible African-Americans throughout the state. Under Duren, Andrews is required to show underrepresentation relative to African-Americans in the "community." Here, the community is not the entire state of West Virginia, but rather the six counties comprising the Wheeling point of holding court. See United States v. McGrady, 173 F.3d 426, at

**USA v. ANDREWS** 1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

*2 (4th Cir. 1999) (per curiam) (unpublished table decision) (requiring the percentage of African-Americans eligible to vote in the Asheville division); Barnette v. United States, No. 3:12CV327, 2014 WL 23817, at *6 (W.D.N.C. Jan. 22, 2014) (requiring the percentage of African-Americans registered to vote in the Charlotte division).

With respect to the Clarksburg venire, the Court agrees with Judge Kaull's assertion that the issue is not germane to Andrews's claim of underrepresentation in the Wheeling venire. That said, Andrews appears to challenge the selection process for the Clarksburg venire on the same grounds. Thus, to the extent he attempts to raise such a challenge, the Court will address his argument.

Andrews has provided the total percentage of African-Americans in the eleven counties comprising the Clarksburg point of holding court. According to his compilation of census statistics, 8340 of the 329,203 residents of the counties within the Clarksburg point of holding court, or 2.53%, are African-American. That figure, however, includes African-Americans who are not eligible to be selected for the jury venire because they are not licensed drivers and have not registered to vote. Thus, the Court cannot determine whether African-Americans are underrepresented in the Clarksburg

USA v. ANDREWS                                            1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

venire because Andrews has not provided the percentage of jury-eligible African-Americans at this point of holding court for comparison purposes.

**B.**

Even assuming that thirty African-Americans on the Wheeling venire and thirty-two African-Americans on the Clarksburg venire constitutes underrepresentation, Andrews has failed to demonstrate systematic exclusion as required under Duren's third prong. Systematic exclusion is "[t]he essence of a 'fair-cross-section' claim." Lockhart v. McCree, 476 U.S. 162, 174 (1986). Exclusion of a distinctive group is systematic when it is "inherent in the particular jury-selection process utilized." Duren, 439 U.S. at 366. "However, such systematic exclusion must be proven; it will not be presumed." United States v. Espinoza, 641 F.2d 153, 168 (4th Cir. 1981) (citing Tarrance v. Florida, 188 U.S. 519 (1903)).

In Taylor v. Louisiana, the Supreme Court determined that a Louisiana jury selection process systematically excluded women by requiring them to file a written declaration of their desire to be subject to jury service in order to be selected. 419 U.S. at 531-33. Duren also found systematic exclusion of women where the state of Missouri gave women two opportunities to opt out of jury service during the selection process. 439 U.S. at 366-67.

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

Federal appellate courts have found systematic exclusion present where jurors were selected from a venire that excluded two communities with large minority populations, see United States v. Jackman, 46 F.3d 1240, 1248 (2d Cir. 1995), and where jury commissioners selected jurors based on their subjective judgment about which individuals were "intelligent and upright." See Gibson v. Zant, 705 F.2d 1543, 1548 (11th Cir. 1983).

Here, Andrews has not pointed to any specific component of this district's jury selection process that warrants a finding that it systematically excludes African-Americans. Moreover, the Fourth Circuit repeatedly "has approved the use of a voter registration list as a vehicle to select jurors." United States v. Anthony, 138 Fed. App'x 591, 594 (4th Cir. 2005) (per curiam) (citing United States v. Lewis, 10 F.3d 1086, 1090 (4th Cir. 1993); United States v. Cecil, 836 F.2d 1431, 1448 (4th Cir. 1988)).  In Anthony, the court also looked favorably on a district's use of the list of licensed drivers because it was "a direct attempt to increase the number of African-Americans in the jury venire."  138 Fed. App'x at 594 (emphasis added).

### C.

Finally, Andrews argues that Judge Kaull relied on "circular logic" by determining on the one hand that the motion to dismiss

**USA v. ANDREWS**                                                      1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

was not based on sufficient statistical analysis, and on the other hand denying Andrews funding for a statistician. In fact, Judge Kaull recommended that Andrews's motion to dismiss be denied after he determined that Andrews had failed to establish a prima facie fair cross section claim under the second and third prongs of Duren.

As to the underrepresentation prong, Judge Kaull found that Andrews had not provided the necessary data on which to base such a determination. (Dkt. No. 475 at 19). But he did not find, as Andrews suggests, that a statistical analysis was lacking.[2] Thus, any further crunching of incorrect numbers by an expert statistician would not aid the Court in determining whether African-Americans were underrepresented.

More importantly, no matter how historically underrepresented African-Americans allegedly have been according to Andrews and his statistician, "a showing of mere statistical underrepresentation, without evidence of actual discriminatory or exclusionary practices [is] insufficient to establish a prima facie violation of the sixth amendment fair cross-section requirement." Cecil, 836 F.2d at 1446

---

[2] Indeed, Andrews has submitted the analysis that his proposed statistician would have performed. (Dkt. No. 490 at 13). The analysis purports to demonstrate underrepresentation by way of a "chi-square test."

USA v. ANDREWS                                              1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

(internal quotation marks and citation omitted); see also United States v. Peoples, 70 F.3d 113, at *1 (4th Cir. 1995) (per curiam) (unpublished table decision). Thus, the third prong of Duren is dispositive of Andrews's claim, regardless of any statistical analysis.

## V.

In addition to his fair cross section claim, Andrews asserts a due process claim. He argues that the entry of the R&R "operates to deny [him] the right to due process of law because it was entered without notice, a meaningful opportunity to be heard, and a full and fair hearing on the merits of the motion [to dismiss]." (Dkt. No. 490 at 3). Andrews also contends that the R&R "operated to deprive [him] of his right to be present during every critical stage of the prosecution." Id. These two positions are, of course, mutually exclusive. If no hearing on the motion occurred, Andrews was not denied his right to be present. If Andrews was denied his right to be present, a hearing on the motion must have occurred.

The former of these two positions is untenable because "[a] defendant is not automatically entitled to an evidentiary hearing." United States v. N-Jie, 276 Fed. App'x 325, 329 (4th Cir. 2008) (per curiam); accord United States v. McAndrews, 12 F.3d 273, 279

12

**USA v. ANDREWS** 1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

(1st Cir. 1993) ("A criminal defendant is not automatically entitled to an evidentiary hearing on a pretrial or posttrial motion."). Therefore, the Court will assume that a hearing on Andrews's motion to dismiss did occur, and that he now asserts a violation of his "due process right 'to be present in his own person.'"[3] Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934)).

"'[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" United States v. Gagnon, 470 U.S. 522, 526 (1985) (alteration in original) (quoting Snyder, 291 U.S. at 105-06). The right is not absolute; the defendant's presence must bear "a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Stincer, 482 U.S. at 745 (internal quotation marks and citation omitted). "[T]he whole point of the right to be present . . . is to permit the defendant to contribute in some meaningful way to the fair and

---

[3] Notably, Fed. R. Crim. P. 43(a)(2) also provides criminal defendants with the right to be present at "every trial stage." Andrews does not assert the violation of his right under Rule 43. Even if he had, Rule 43(b)(3) provides an exception to the right when the proceeding at issue involves only a "hearing on a question of law," such as whether a particular jury selection process violates the Sixth Amendment's fair cross section requirement.

USA v. ANDREWS                                              1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND
RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING
MOTION FOR PERMISSION TO EMPLOY EXPERT**

accurate resolution of the proceedings against him." United States v. Gonzales-Flores, 701 F.3d 112, 118 (4th Cir. 2012).

Here, Andrews claims that he had a due process right to be present at the May 12, 2014 hearing. He has not, however, pointed to any way in which he could have contributed at that hearing, which involved the purely legal question of whether the hiring of a statistician could assist him in proving that his right to a jury venire composed of a fair cross section of the community had been violated. Moreover, it is not evident how Andrews's presence or testimony would have assisted him in prevailing on the motion since no testimony impactful to the analysis was taken. At bottom, the due process right invoked by Andrews was not implicated by his absence at the May 12, 2014 hearing.

Even if Andrews had a right to be present at the hearing, he signed a waiver of appearance. (Dkt. No. 445). Andrews now contends that the waiver was not signed knowingly because Judge Kaull's notice of the hearing referred only to the motion for permission to employ a statistician. (Dkt. No. 401). Notably, Andrews's waiver states "I have been advised by the Court <u>and counsel</u> that I can appear before the Court in person at the hearing on . . . my motion to employ an expert statistician." (Dkt. No. 445) (emphasis added). A reasonable attorney should have

**USA v. ANDREWS** 1:12CR100-1

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO DISMISS INDICTMENT, AND DENYING MOTION FOR PERMISSION TO EMPLOY EXPERT**

anticipated that a hearing on a motion to employ a statistician necessarily would prompt questions concerning the underlying substantive motion since the two are intertwined. And a reasonable attorney should have advised his client accordingly. The Court can only presume that Andrews's attorney provided such reasonable advice in this instance, and therefore that Andrews's waiver of his appearance at the May 12, 2014 hearing was made knowingly.

## VI.

For the reasons discussed, the Court **OVERRULES** Andrews's objections, **ADOPTS** the R&R, **DENIES** Andrews's motion to dismiss, and **DENIES** Andrews's motion for permission to employ an expert.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: December 3, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
