# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                          **CRIMINAL NO. 1:12CR100-1**
                               **(Judge Keeley)**

**PATRICK FRANKLIN ANDREWS,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE NOTICE OF DEATH PENALTY [DKT. NO. 201]

Pending before the Court is the motion of the defendant, Patrick Franklin Andrews ("Andrews"), to strike the government's notice of intent to seek the death penalty. (Dkt. No. 201). For the following reasons, the Court **DENIES** the motion.

### I. INTRODUCTION

In this capital case, the government alleges that, while serving a life sentence at the United States Penitentiary Hazelton in Preston County, West Virginia, Andrews unlawfully killed another inmate, Jesse Harris ("Harris"). On October 2, 2012, a federal grand jury indicted Andrews on two counts: murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. § 1118 ("Count I"); and second degree murder, in violation of 18 U.S.C. § 1111 ("Count II"). The indictment also included the following "Notice of Special Findings" made by the Grand Jury:

# MEMORANDUM OPINION AND ORDER DENYING
# DEFENDANT'S MOTION TO STRIKE NOTICE OF DEATH PENALTY

- Andrews was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a)(2));

- Andrews intentionally killed Harris (18 U.S.C. § 3591(a)(2)(A));

- Andrews intentionally inflicted serious bodily injury that resulted in Harris's death (18 U.S.C. § 3591(a)(2)(B));

- Andrews intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Harris died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

- Andrews intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Harris died as a direct result (18 U.S.C. § 3591(a)(2)(D));

- Andrews caused Harris's death during the commission of an offense under 18 U.S.C. § 1118 (18 U.S.C. § 3592(c)(1));

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO STRIKE NOTICE OF DEATH PENALTY**

- Andrews has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm against another person (18 U.S.C. § 3592(c)(2));

- Andrews has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. § 3592(c)(3)); and

- Andrews has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person (18 U.S.C. § 3592(c)(4)).

On October 23, 2012, the government filed notice of its intent to seek the death penalty against Andrews as to Count I of the indictment. In its notice, the government proposed to prove the Grand Jury's special findings listed above, as well as the following:

- Andrews represents a continuing danger to the lives and safety of other persons; and

- Andrews caused injury, harm and loss to the victim and the victim's family.

In his motion to strike the government's notice of intent to seek the death penalty, Andrews argues as follows:

- The federal death penalty operates in an arbitrary, capricious, irrational, and discriminatory manner;

- The United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002) rendered the Federal Death Penalty Act of 1994, 18 U.S.C. 3591, et seq. ("FDPA"), inoperative;

- The government obtained the indictment in violation of the Fifth Amendment;

- The FDPA fails to provide a structure by which jurors can make a reasoned choice between execution and a sentence of life in prison without the possibility of release;

- There is an unacceptable risk of executing an innocent person;

- The non-statutory aggravating factors should be stricken;

- Certain statutory and non-statutory aggravating factors should be stricken or modified because they are vague;

- West Virginia does not permit capital punishment; and

- Evolving standards of decency have reached a point that capital punishment is no longer constitutional.

## II. DISCUSSION

### A. Arbitrary and Capricious

Andrews urges the Court to "strike down" the FDPA because there is no principled basis for distinguishing between cases in which the death penalty is imposed from those in which it is not, and because it is unevenly imposed on the basis of race. Courts have held, however, that "the FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty." United States v. Webster, 162 F.3d 308, 354 (5th Cir. 1998); see also United States v. Mitchell, 502 F.3d 931, 983 (9th Cir. 2007) (rejecting summarily the race-based argument against the FDPA, and determining that the rareness of federal executions "does not render the FDPA unconstitutional"); United States v. Sampson, 486 F.3d 13, 24 (1st Cir. 2007) ("Nor does the frequency with which the federal death penalty is sought render the FDPA unconstitutional. . . . The process, therefore, is not arbitrary."); United States v. Fell, 360 F.3d 135, 144 (2d Cir. 2004) ("[T]he FDPA does not undermine 'heightened reliability,' it promotes it.").

The arguments presented by Andrews are not novel. In United States v. Sampson, 275 F. Supp. 2d 49, 87 (D. Mass. 2003), for

example, the defendant argued that the FDPA operates in an unconstitutional manner because "there is no principled way to distinguish between federal cases in which the death penalty is imposed and those in which it is not," and because "the death penalty is sought on the invidious basis of race." The district court determined that "Sampson's claims do not, individually or cumulatively, establish that the FDPA operates in an arbitrary and capricious manner." Id.; see also, e.g., United States v. Hammer, 25 F. Supp. 2d 518, 547 (M.D. Pa. 1998) ("The mere fact that the government has only sought the death penalty in a de minimis number of murder cases involving federal inmates is not sufficient to demonstrate that the prosecution of Hammer is arbitrary and capricious."); United States v. James, No. 02CV0778, 2007 WL 914249, at *5 (E.D.N.Y. Mar. 24, 2007) ("It is clear from a reading of the FDPA that the FDPA provides a principled basis for seeking the death penalty."); United States v. Sablan, No. 00CR531, 2006 WL 1028780, at *10-12 (D. Colo. Apr. 18, 2006) (rejecting arguments made here).

For the reasons discussed in all the cases to have previously rejected the arguments made here, the Court likewise rejects Andrews's contention that the death penalty under the FDPA is arbitrary and capricious. Cf. United States v. Regan, 228 F. Supp.

2d 742, 744 (E.D. Va. 2002) ("Upon review of Defendant's 109-page brief and the Government's opposition thereto, the Court concludes that many of Defendant's arguments rehash arguments previously made before and rejected by many courts on these issues. . . . The Court rejects all of Defendant's previously discredited arguments and adopts the reasoning of the cases cited herein.").

**B.    Claims Under Ring v. Arizona and Fifth Amendment**

In Ring v. Arizona, 536 U.S. 584, 600 (2002), the Supreme Court resolved a conflict between two prior decisions in Walton v. Arizona, 497 U.S. 639 (1990), and Apprendi v. New Jersey, 530 U.S. 466 (2000).  In Walton, the Court examined the constitutionality of Arizona's capital sentencing scheme, which authorized the judge to impose a sentence of death by finding the existence or nonexistence of aggravating or mitigating circumstances defined by statute.  497 U.S. at 643.  The defendant argued that the Sixth Amendment required that "every finding of fact underlying the sentencing decision must be made by a jury, not by a judge, and that the Arizona scheme would be constitutional only if a jury decides what aggravating and mitigating circumstances are present in a given case and the trial judge then imposes sentence based on those findings."  Id. at 647.  The Court, however, determined that the Arizona scheme passed constitutional muster.  Id. at 649.

A decade later, in Apprendi, the Court held that, "[o]ther than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Ring, however, the Court recognized that "Walton and Apprendi are irreconcilable; our Sixth Amendment jurisprudence cannot be home to both." 536 U.S. at 609. To resolve the conflict, the Court "overrule[d] Walton to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Id. It further explained that "the Sixth Amendment requires that [aggravating factors] be found by a jury." Id.

In addition to several ancillary arguments, Andrews argues primarily that, under Ring, the FDPA is facially unconstitutional because it "nowhere provides for presentation of aggravating factors to a grand jury." (Dkt. No. 201 at 57). This also ties in to his arguments related to the Fifth Amendment's Indictment Clause. These arguments have been rejected on numerous occasions by the Fourth Circuit and other circuit courts. See United States v. Hager, 721 F.3d 167, 207-08 (4th Cir. 2013); United States v. Barnette, 390 F.3d 775, 788-90 (4th Cir. 2004), vacated on other grounds by Barnette v. United States, 546 U.S. 803 (2005); United

States v. Higgs, 353 F.3d 281, 292-99 (4th Cir. 2003); United States v. Jackson, 327 F.3d 273, 281-90 (4th Cir. 2003); see also United States v. Lawrence, 735 F.3d 385, 420 (6th Cir. 2013); United States v. Mikos, 539 F.3d 706, 715-16 (7th Cir. 2008); United States v. Fell, 531 F.3d 197, 236-40 (2d Cir. 2008); United States v. Barrett, 496 F.3d 1079, 1094-95 (10th Cir. 2007); Sampson, 486 F.3d at 20-23; United States v. Brown, 441 F.3d 1330, 1366-68 (11th Cir. 2006); United States v. Bourgeois, 423 F.3d 501, 506-08 (5th Cir. 2005); United States v. Allen, 406 F.3d 940, 949 (8th Cir. 2005). Relying on the reasoning of these decisions, the Court rejects Andrews's arguments related to Ring and the Fifth Amendment. See United States v. Rodriguez, 581 F.3d 775, 816 (8th Cir. 2009) (stating summarily that "[t]his argument is foreclosed by precedent").

**C. Jury's Ability to Make a Reasoned Choice**

Andrews next argues that the FDPA is unconstitutional because the jury might be confused as to its role in any sentencing phase. The jury's understanding of its role will be gleaned from the Court's instructions, which will not be drafted, much less provided to counsel, until it becomes necessary to do so. Therefore, "[t]he Court agrees with the approach of other district courts that have found that challenges to the death penalty based on the

9

incomprehensibility of jury instructions cannot be adequately addressed at the pre-trial phase." United States v. Jacques, No. 2:08CR117, 2011 WL 1675417, at *12 (D. Vt. May 4, 2011), vacated in part on other grounds by United States v. Jacques, 684 F.3d 324, 332 (2d Cir. 2012) (citing United States v. Mikos, No. 02CR137-1, 2003 WL 22110948, at *19 (N.D. Ill. Sept. 11, 2003) ("If the case before this court proceeds to the sentencing phase of trial, this court will ensure that defense counsel and counsel for the government will have an opportunity to formulate instructions that will frame the jury's deliberations."); United States v. Llera Plaza, 179 F. Sup. 2d 444, 450 (E.D. Pa. 2001) ("To the extent that aggravating and mitigating factors are abstract concepts, they are capable of being rendered precise and concrete in the course of crafting instructions to the sentencing jury. . . . There is no reason to believe that the jury will find the collaborative handiwork of court and counsel to be incomprehensible.")). Andrews, of course, will have the opportunity to challenge the jury instructions, if necessary, at the appropriate time.

**D.  Risk of Executing an Innocent Person**

Next, Andrews argues that the risk of imposing a sentence of death on a defendant who is actually innocent renders the FDPA unconstitutional. The Supreme Court has rejected this argument on

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO STRIKE NOTICE OF DEATH PENALTY**

Eighth Amendment grounds, Gregg v. Georgia, 428 U.S. 153, 176-87 (1976), and on due process grounds, Herrera v. Collins, 506 U.S. 390, 407-08 (1993).  In 2002, a federal district court accepted the argument made here, and concluded that "execution under the [FDPA], by cutting off the opportunity for exoneration, denies due process and, indeed, is tantamount to foreseeable, state-sponsored murder of innocent human beings." United States v. Quinones, 205 F. Supp. 2d 258, 268 (S.D.N.Y. 2002).  But the Second Circuit reversed the district court's decision, explaining that, "[s]ince 1978, the Supreme Court has upheld challenges to death penalty statutes based upon the Due Process Clause as well as the Eighth Amendment." United States v. Quinones, 313 F.3d 49, 65 (2d Cir. 2002) (citing Wilkerson v. Utah, 99 U.S. 130 (1878); In re Kemmler, 136 U.S. 436 (1890); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 (1947) (Frankfurter, J., concurring)).  The Second Circuit further observed that, "if the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make." Id. at 69.  In the same vein, this Court finds that well-settled precedent necessitates a rejection of Andrews's argument; the FDPA is not unconstitutional on the ground that an innocent defendant might be executed.

11

**E.   Non-Statutory Aggravating Factors**

Andrews contends that the two non-statutory aggravating factors included by the government in its notice of intent to seek the death penalty are not permitted by the FDPA, and therefore should be stricken. Section 3592(c) mandates that the sentencing jury "shall consider" sixteen enumerated aggravating factors. It further provides that the sentencing jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). Pursuant to this latter provision, the government provided notice of two "other" aggravating factors it intends to prove at sentencing. Finally, § 3591(a) provides that a defendant "shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified." According to Andrews, because § 3591(a) specifically contemplates only the factors "set forth in section 3592," and because the two non-statutory aggravating factors are not explicitly set forth in that section, they should be stricken.

Again, this interpretation of the FDPA is not novel. In 1996, a federal district court found "no merit" in the argument, and called it a "strained and hyper-literal reading of § 3591(a)."

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO STRIKE NOTICE OF DEATH PENALTY**

United States v. Nguyen, 928 F. Supp. 1525, 1536 (D. Kan. 1996); see also United States v. Robinson, 367 F.3d 278, 292 (5th Cir. 2004) (rejecting argument as "meritless"); United States v. Hammer, No. 4:96CR239, at **2-4 (M.D. Pa. Dec. 1, 2011) (adopting reasoning of Nguyen); United States v. Barnes, 532 F. Supp. 2d 625, 643 (S.D.N.Y. 2008) ("This argument is without merit. . . . The plain text of the FDPA therefore authorizes the use of factors not specifically enumerated in the statute."). In Llera Plaza, 179 F. Supp. 2d at 459, the court considered the argument and concluded that "[s]imply because consideration of one type of factor is mandated does not mean that consideration of other types of factors is precluded," and "[t]he defendants' argument does not, therefore, present a compelling challenge to the government's authority to articulate non-statutory aggravating factors under the FDPA." Here, the Court agrees with the reasoning articulated in this line of cases, and rejects the argument that the FDPA precludes consideration of non-statutory aggravators such as those identified by the government in this case.

Andrews also reiterates his argument that the death penalty is arbitrary and capricious, this time because the non-statutory factors noticed by the government could result in a random and unguided imposition of the death penalty by jurors. The line of

cases noted in section II.A. supra dealt with this argument, and those courts found it to be without merit. In particular, the Fourth Circuit has "reject[ed] the contention that the FDPA is unconstitutional merely because it allows the sentencing jury to weigh nonstatutory aggravating factors when deciding whether to impose the sentence of death upon a defendant convicted of a death-eligible offense." Higgs, 353 F.3d at 320.

Finally, Andrews contends that the government's notice of non-statutory aggravators violates the Constitution's Ex Post Facto Clause. See U.S. Const. art. I, § 9, cl. 3. Again, however, the Fourth Circuit has determined this argument to be untenable. Higgs, 353 F.3d at 322 (rejecting the argument because the non-statutory aggravating factors "do not increase the possible punishment or alter the elements of the offense").

**F.  Adequacy of Aggravating Factors**

According to Andrews, certain of the aggravating factors noticed by the government are facially invalid, and some require the government to provide more specific evidence because they are vague. As to the latter category, Andrews asks the Court to "require the government to produce an informative summary of all evidence/information it intends to offer in support of the

aggravating factors set forth in the Notice." (Dkt. No. 201 at 131).

**1. Invalidity**

Andrews first contends that factor (f) from the government's notice - "caused the death of Jesse Harris during the commission of an offense under 18 U.S.C. § 1118" - is "duplicative" of the elements of the underlying offense. This factor is specifically enumerated by 18 U.S.C. § 3592(c)(1) as one of the factors the sentencing jury "shall consider." Moreover, the Supreme Court has explained that "[t]he aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." Tuilaepa v. California, 512 U.S. 967, 972 (1994); see also Higgs, 353 F.3d at 315 ("[T]he Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase."). Therefore, the Court will not strike it from the government's notice.

Next, Andrews argues that "[t]he government certainly should be precluded from using dated (remote in time) evidence of prior misconduct in this capital sentencing proceeding." (Dkt. No. 201 at 125). The government has clarified that the evidence it intends to use at sentencing consists of any disciplinary action taken

against Andrews during his incarceration with the Bureau of Prisons, as well as two convictions for murder while armed from the Superior Court of the District of Columbia. (Dkt. No. 230 at 3). Although Andrews relies on several sources of law for his argument, including the statute of limitations for federal prosecution, the United States Sentencing Guidelines, and the Federal Rules of Evidence, none is relevant to a jury's consideration of aggravating factors in a capital sentencing proceeding. Andrews also relies on the decision in United States v. O'Driscoll, 250 F. Supp. 2d 432, 436 (M.D. Pa. 2002) in urging the Court to consider remoteness in time. In that case, however, the district court considered temporal proximity only in regard to unadjudicated acts. Id.

To the extent the government will use Andrews's two prior convictions in establishing the factor described in § 3592(c)(2), such evidence is specifically permitted by the statute itself, which requires the jury to consider previous convictions of violent felonies involving firearms "[f]or any offense." Had the government intended to use those convictions to establish the non-statutory aggravating factor of future dangerousness, the Court would have had to consider whether the "probative value is outweighed by the danger of creating unfair prejudice." 18 U.S.C. § 3593(c). However, the Court interprets the government's brief to

mean that the non-statutory future dangerousness factor will be established solely through Andrews's Bureau of Prisons file. (Dkt. No. 230 at 3) (stating that "[Andrews] was provided his complete Bureau of Prisons file, which includes reports of several instances of threats and disruptive behavior while confined, which support the alleged future dangerousness aggravating factor"). Therefore, the Court need not consider whether the two prior convictions are too remote in time.

Regarding any prison misconduct noted in Andrews's BOP file, Andrews contends that it is irrelevant as to future dangerousness. (Dkt. No. 201 at 125). According to Andrews, "[t]he prejudicial impact of injecting this issue into the jury's consideration during the penalty phase outweighs any probative value or particular relevance that it might have on the issue of whether [he] should live or die." Id. Contrary to his argument, however, "[e]vidence of future dangerousness necessarily touches upon a variety of topics, including a defendant's juvenile record, prior murders and other crimes, and prison records." United States v. Snarr, 704 F.3d 368, 394-95 (5th Cir. 2013) (emphasis added) (citations omitted). "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." Jurek v. Texas, 428 U.S. 262, 276 (1976).

Finally, Andrews argues that victim impact evidence is impermissible. That issue became moot when the government represented that it will no longer pursue that factor. (Dkt. No. 273 at 47 n.11).

**2. Vagueness**

Andrews believes the government should provide additional evidence as to several of the aggravating factors because they are too vague as described in the government's notice. However, the instant motion was filed prior to the government's filing of its response to Andrews's motion for discovery and a bill of particulars, in which it clarified the precise evidence on which it will rely. As to Andrews's prior convictions, the government provided the case numbers, dates of offenses, and the courts where the convictions occurred. The government further explained that it will not offer victim impact evidence. Finally, it stated that the final paragraph of its notice was intended merely to notify Andrews and the Court that the government will rely on any evidence adduced during the guilt phase of the trial inasmuch as it relates to any of the aggravating factors alleged.

**G.  Capital Punishment in West Virginia**

Andrews also cites a law review article, Michael J. Zydney Mannheimer, "When the Federal Death Penalty Is 'Cruel and

Unusual,'" 74 U. Cin. L. Rev. 819 (2006), for the proposition that the federal government may not proceed with a federal capital prosecution in a state, such as West Virginia, that does not authorize capital punishment. This Court, however, is unable to accept Andrews's argument because the Fourth Circuit has determined that "[a]n assertion that the death penalty is improper in one jurisdiction because it is not allowed in another is, at bottom, a reflection of the debate surrounding the propriety of the death penalty, which is a matter of policy for the legislative branch." Higgs, 353 F.3d at 328; see also United States v. Gabrion, 719 F.3d 511, 536 (6th Cir. 2013) ("An argument about Michigan's decision, as a state, not to impose the death penalty has nothing to do with a federal jury's determination of the appropriateness of applying the federal death penalty statute with respect to Defendant.").

**H.  Indecency of the Death Penalty**

Finally, Andrews argues that "evolving standards of decency have reached the point where the court can declare that the death penalty is no longer consistent with the values embodied in the Eighth Amendment." (Dkt. No. 201 at 132). But "the Supreme Court expressly held in Gregg that, to the extent our standards of decency have evolved since the enactment of the Constitution, they still permit punishment by death for certain heinous crimes such as

murder." Quinones, 313 F.3d at 61-62 (citing Gregg, 428 U.S. at 186-87); see also United States v. Williams, No. 4:08CR70, 2013 WL 1335599, at *22 (M.D. Pa. Mar. 29, 2013).  Obviously, it is not this Court's prerogative to amend Supreme Court precedent.  See Agostini v. Felton, 521 U.S. 203, 237-38 (1997) (determining that district court was "correct to recognize that the motion had to be denied unless and until this Court reinterpret[s] the binding precedent").

### III. CONCLUSION

For the reasons discussed, the Court **DENIES** Andrews's motion to strike notice of the death penalty.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 16, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE