IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                    **CRIMINAL NO. 1:12CR100-1**
                                                **(Judge Keeley)**

**PATRICK FRANKLIN ANDREWS,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE [DKT. NO. 588]

The trial of the captioned case is scheduled to begin in this Court on May 4, 2015. On February 5, 2015, the defendant, Patrick Franklin Andrews ("Andrews"), filed a motion for change of venue. (Dkt. No. 588). The Court held a hearing on March 13, 2015, during which it **DENIED** the motion and advised that a written opinion would follow.

Andrews is charged with murdering a fellow inmate in October 2007, while both were incarcerated at the United States Penitentiary Hazelton ("Hazelton"). Since that time, local news outlets have devoted significant attention to this case, and to the violence of Hazelton inmates generally. Moreover, the American Federation of Government Employees has erected billboards on either side of the interstate near the Hazelton exit displaying the following message: "2014 ALONE. 150+ ASSAULTS 2 MURDERS. HAZELTON PRISON IS UNSAFE FOR THE COMMUNITY, INMATES AND STAFF!" (Dkt. No.

588-1).  Andrews contends that this publicity is so pervasive as to taint the proceedings in this Court by creating a presumption of inherent prejudice in the prospective jury pool.

"As a general premise, a change of venue is warranted when the court is satisfied that there exists in the district where the prosecution is pending 'so great a prejudice against the defendant' that 'the defendant cannot obtain a fair and impartial trial.'" United States v. Higgs, 353 F.3d 281, 307 (4th Cir. 2003) (quoting Fed. R. Crim. P. 21(a)).  Where pretrial publicity constitutes the alleged source of prejudice, a two-step process guides the Court's inquiry:

> As a first step, a trial court must address whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted.  In that case, a motion for a change of venue should be granted before jury selection begins.  This court has cautioned, however, that "[o]nly in extreme circumstances may prejudice be presumed from the existence of pretrial publicity itself." Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987).  Instead, a trial court customarily should take the second step of conducting a *voir dire* of prospective jurors to determine if actual prejudice exists. Wansley v. Slayton, 487 F.2d 90, 92-93 (4th Cir. 1973).  Only where *voir dire* reveals that an impartial jury cannot be impanelled would a change of venue be justified.

United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991) (alterations and italics in original).

Like Andrews, the defendant in Higgs argued that presumed prejudice existed based on significant media coverage.  353 F.3d at 308.  The Fourth Circuit disagreed, and held that "the district

2

court did not abuse its discretion in ruling that the coverage did not rise to the level necessary to require a change of venue" because, "although the coverage was not entirely dispassionate and factual, neither was it highly inflammatory." Id. Similarly, in United States v. Bailey, 112 F.3d 758, 769 (4th Cir. 1997), the defendant argued that "due to the quantity and the prejudicial quality of the press coverage it was impossible for him to obtain a fair trial" in the Southern District of West Virginia. The district court denied his motion for change of venue, and the Fourth Circuit affirmed, stating "the district court did not abuse its discretion" because "[i]t followed the two-step analysis set out in Bakker and the record supports its action." Id. at 770.

Here, the press coverage relied on by Andrews does not present the "extreme circumstances" described in Bakker. Although the coverage is voluminous, "[s]heer volume of publicity alone does not deny a defendant a fair trial." Bakker, 925 F.2d at 732. Moreover, the bulk of the articles are factual rather than inflammatory, and "hence less likely to poison the venire pool." United States v. Lindh, 212 F. Supp. 2d 541, 549 (E.D. Va. 2002) (citing Murphy v. Florida, 421 U.S. 794, 801 (1975)). Finally, many of the articles are old, some even predating Andrews's alleged murder. See Bakker, 925 F.2d at 732-33 ("The recency of alleged prejudicial publicity is important because '[o]bviously where considerable time has elapsed since publication, the probability or

3

likelihood of impact is appreciably lessened.'") (quoting Wansley, 487 F.2d at 93).

As for the billboard, it does not directly address Andrews's case; in fact, it references only incidents that occurred in 2014. Furthermore, the billboard is located in the northeast corner of Preston County, which is a geographically isolated location relative to the other ten counties from which this point of holding court draws jurors. Even if potential jurors have seen the billboard, "[p]rominence does not necessarily produce prejudice, and juror impartiality, we have reiterated, does not require ignorance." Skilling v. United States, 561 U.S. 358, 381 (2010) (emphasis in original); see also In re Tsarnaev, __ F.3d __, __, No. 15-1170, 2015 WL 855777, at *1 (1st Cir. Feb., 27, 2015) (per curiam) ("It is no surprise that people in general, and especially the well-informed, will be aware of [a high-profile case]. Knowledge, however, does not equate to disqualifying prejudice."). The Court is thus unpersuaded that inherent prejudice exists as a result of pretrial publicity.

Still, the Court is required under step two of Bakker to conduct voir dire of prospective jurors to ensure that actual prejudice does not exist. In the questionnaire sent to 300 prospective jurors, the Court asked, inter alia, the following questions:

4

- "Have you read, heard, seen or learned about living and working conditions for inmates and correctional officers inside USP Hazleton? If so, what have you read, heard, or seen?"
- "Have you formed any opinions about prison conditions at USP Hazelton, or any other federal correctional institution, that would make it difficult for you to sit as a juror in a case in which prison conditions may be an issue?"
- "Have you read, seen or heard anything about this case, the death of Jesse Harris, the criminal investigation, this defendant, Patrick Franklin Andrews or the co-defendant Kevin Bellinger from any of the following sources [then listing various media sources]?"
- "State in as much detail as you can recall anything you have read, seen or heard about this case or any of the people involved in [it]."

The answers to these pre-screening questions, and answers given during voir dire, provide a safeguard against the existence of actual prejudice in any panel member ultimately chosen to serve.

In conclusion, the Court finds no inherent prejudice based on pretrial publicity. Moreover, it is convinced that the questionnaires and voir dire quell any concerns regarding actual

5

prejudice.  Therefore, for the reasons discussed, the Court **DENIED** Andrews's motion for change of venue.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 27, 2015.

/s/ Irene M. Keeley<br>
IRENE M. KEELEY<br>
UNITED STATES DISTRICT JUDGE